In the Matter of the Accounting of ARCHIE A. COATES, as Executor under the Will of JOHN P. SANBORN, Deceased.

Surrogate's Court, New York County, October 19, 1942.

*Edwin M. Bohm* for Archie Austin Coates, as executor, petitioner.

*Peter L. F. Sabbatino* and *Edward J. Fontana* for E. Richard Bagarozy, respondent.

*Frank Kreitzberg* for Hattie Freisinger, assignee of E. Richard Bagarozy, respondent.

FOLEY, S. In this contested accounting proceeding the sole question presented for determination is the construction and effect of the third paragraph of the will of the decedent, which reads as follows: "I give and devise unto my friend E. Richard Bagarozy all shares of stock standing in my name at the time of my death." The question presented is what shares of stock left by the decedent passed under the phrase "standing in my name."

The will was executed on August 11, 1939. At the time of decedent's death, on March 7, 1941, he owned two hundred shares of Detroit Compensating Axle Corporation which were registered in his name on the books of the corporation. This stock had been given to the decedent prior to the execution of his will by Mr. Bagarozy, the specific legatee. It is conceded that these shares of stock pass to the legatee named in the will.

The decedent owned or was entitled to certain other shares of stock which were not registered in his name and it is these shares of stock that give rise to the dispute between the executor and the specific legatee. These shares of stock may be classified as follows: (1) shares of stock in Pressurelube Corporation purchased by the decedent on February 3, 1941, assigned to him by indorsement of the certificate, but not registered in his name on the corporate books; (2) various shares in five corporations held for decedent's account by a brokerage house, kept in decedent's name on the brokers' books, but registered in so-called "street names" and not in the name of decedent; (3) shares of stock in a corporation bequeathed to decedent under the will of his sister who died January 30, 1941. These latter shares were not transferred from the name of his sister during the lifetime of decedent.

The decedent, a music critic for a large metropolitan newspaper, drafted his own will. We are charged with the duty of ascertaining the intention of the testator as manifested by the language he has used. Having in mind that the decedent was a layman, it would appear that his words were used "in the vocabulary of ordinary life and not in any technical or narrow sense." (*Matter of Vanderbilt,* 132 Misc. 150, 154; *Fidelity*

*Union Trust Co.* v. *Lowy,* 123 N. J. Eq. 90.) In interpreting the words " standing in my name," the executor seeks to restrict their meaning so as to include only certificates bearing the name of the decedent on their face. In other words, he would read it as if written " registered in my name on the books of the corporation." On the other hand, the specific legatee maintains that the words " standing in my name " were intended to mean " owned by me " or " belonging to me."

The narrow and limited interpretation advocated by the executor clearly was not intended by the testator and cannot prevail. The decedent made a bequest of " *all* shares of stock standing in my name *at the time of my death*." (Italics mine.) He was a man of literary ability. Had he intended to restrict this legacy to shares of stock then owned by him or to particular shares of stock or to stock registered in his own name on the corporate records, it would be expected that he would indicate that intent in appropriate language. On the contrary it seems clear that by the words " standing in my name " he meant to include all stock owned by him at his death.

In respect of the shares of stock held for him by the brokerage firm and carried in their accounts in his name, there can be no doubt that these shares come within the meaning of the language used in paragraph third of the will. Certainly they were standing in his name on the books of the brokers. They were purchased for him and regarded as his. Their registration in street names was merely an established business custom of members of the New York Stock Exchange. It was a matter of convenience in selling the stock.

The shares of stock assigned to the decedent by indorsement also come within the meaning and scope of the language used. His ownership of the stock was complete, and even the corporation was required to treat him as the owner for all purposes if it had knowledge of the transfer and assignment of the stock. (Personal Property Law, §§ 162, 182; *Turnbull* v. *Longacre Bank,* 249 N. Y. 159, 166.) The decedent was " the person appearing by the certificate to be the owner thereof." (Personal Property Law, § 182.) This certificate thus comes within the literal meaning of the words " standing in my name."

To hold that the shares of stock held by the brokers and the shares actually assigned to decedent did not pass under the third paragraph of the will to the specific legatee would place a strained and artificial meaning on the words chosen by the testator. The plain and unambiguous language used throughout the will indicates that such an artificial construction should not

be given recognition. "The modern trend of authorities is toward liberality in the treatment of the subject of a specific legacy. The test is the substance of the gift and not the words in which it is attempted to be given." (*Matter of Burr,* 175 Misc. 725, 730; *Matter of Manning,* 196 App. Div. 575, affd. 232 N. Y. 512; *Matter of Martin,* 252 N. Y. 582; *Matter of Cartledge,* 118 Misc. 131, affd. 203 App. Div. 899, affd. 236 N. Y. 515; *Fidelity Union Trust Co.* v. *Roest,* 113 N. J. Eq. 368; *Matter of Friedman,* 177 App. Div. 755; *Matter of Bush,* 124 Misc. 674.)

The decedent and Mr. Bagarozy, the specific legatee of the stock, had been close friends for thirty years. The certificate registered in decedent's name had been given to him by the legatee. The shares that had been purchased by decedent and assigned to him, but not transferred on the books of the corporation, were in a corporation in which the specific legatee was interested. The bequest of all shares of stock owned by the decedent was a perfectly natural one, and no reason appears for refusing to give to the language of the will its literal meaning.

In the English authorities, which construe the words "standing in my name," the phrase has been liberally construed. (*Quennell* v. *Turner,* 13 Beav. 240; *Mackinley* v. *Sison,* 8 Sim. 561; *Ellis* v. *Eden,* 25 Beav. 482; 2 Jarman on Wills [7th Eng. ed.], p. 1241.) Thus, where a testator directed that payment of an annuity be charged against "monies standing in my name in the public funds," it was held that he intended to charge his interests in funds held in the name of trustees for his benefit. (*Quennell* v. *Turner, supra.*) Several pecuniary legacies which a testatrix directed to be paid "out of the monies invested in my name in the four percent. Government securities," were determined to be payable out of funds held by trustees and over which the testatrix had a power of appointment. (*Mackinley* v. *Sison, supra.*) A bequest of French *Rentes* "inscribed in my name on the book" of the Public Debt of France was held to operate upon *Rentes* purchased by brokers for decedent and carried on the brokers' accounts in his name. (*Ellis* v. *Eden, supra.*) In all of these decisions the intent of the testator was effectuated, notwithstanding an inaccuracy in the description of the subject matter of the gift.

The Surrogate, therefore, holds that under the third paragraph of the will, E. Richard Bagarozy is entitled to receive, in addition to the shares of stock registered in the name of decedent, the shares of stock in Pressurelube Corporation indorsed to decedent and all of the shares of stock carried in his account by the brokerage firm.

(Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.)

Submit decree on notice construing the will and settling the account accordingly.