Laurence D. Wood, S.
This is a construction proceeding to determine the legal effect and scope of the ninth paragraph of the last will and testament of Alveretta Falvey which Avas admitted to probate without contest by this court December 14, 1956. Letters testamentary thereupon were issued on the same date to petitioner, Norma Winifred McGrath, the executrix named in said will. The Attorney-General has made a motion for compulsory accounting, on which decision has been reserved. A previous proceeding for the same purpose of construction was had in this court before our former Surrogate as a result of which an opinion in petitioner’s favor was Avritten and two orders thereon were made by the Surrogate which were appealed from by the Attorney-General to the Appellate Division, Fourth Department. In disposing of this appeal, the Appellate Division reversed the orders and remitted the matter to this court for further proceedings in accordance with the opinion of that court (7 A D 2d 476). In the said opinion of the Appellate Division, that court directed this court to take testimony as to the facts and circumstances surrounding the execution of the will, and certain things. that happened thereafter and prior to the death of the testatrix. In particular, the Appellate Division directed that this court should consider certain other matters which were not before the Surrogate upon the making of the orders Avhich have been reversed.
Paragraph ninth of the will in question reads as follows: “ I give and bequeath to Norma Winifred McGrath of 440 Allen Street, Syracuse, Nbav York, my residence and land known as 713 Bear Street, Syracuse, New York, together with all fixtures, furnishings and all property and articles of whatsoever nature found therein, to belong to the recipient absolutely and forever, this bequest being made because either Norma Winifred McGrath or Joyce McGrath have cared for me and stayed with me as a companion in my home upon my request.”
Immediately following this ninth clause of the will for Avhich construction has been petitioned, appears the following clause: 6 ‘ After payment of the above legacies above mentioned, I wish to establish the ‘ Margaret falvey memorial fund ’ to be used for needy educational purposes and for elderly women who are in need of hospitalization but are without funds or families and at the discretion of Norma Winifred McGrath, my execu *419 tor”. This is the last clause of the will before the final one which only appoints her executor and revokes all other wills and codicils.
The question to be determined in the construction of the ninth paragraph of the will is whether or not certain United States Government Bonds of a total value in excess of $60,000 which were alleged to have been found in the home of the testatrix after her death, should be included in the bequest of the home “ together will all fixtures, furnishings and all property and articles of whatsoever nature found therein”, to Norma Winifred McGrath. In order to properly determine this question in construing the ninth paragraph of the will, I am of the opinion that I must of necessity also rule on the question of whether or not the last above-quoted clause is legally a residuary clause, or whether the use of the words “wish to establish” coupled with the words “ and at the discretion of Norma Winifred McGrath, my executor” would prevent said clause from legally being a residuary clause and make the wish therein contained only precatory.
Pursuant to the directions of the Appellate Division, a hearing was held in this court lasting for the better part of three days. The testimony and cross-examination of 15 witnesses including petitioner was taken and some 38 exhibits were offered and received in evidence. The stenographic record of this hearing consists of 408 pages. After hearing and considering and carefully weighing all of the testimony and examining the exhibits, I make the following findings of fact:
First, that although the testatrix was a woman past 80 years of age at the time of the execution of her last will and testament, she was at all times in question in full possession of all of her mental faculties and was a well-educated woman with a high degree of intelligence, having for many years been a school teacher and also principal of a school before her retirement and that she very well knew the meaning of words and phrases in their ordinary sense, but not in their strict legal sense, neither testatrix nor Norma Winifred McGrath being lawyers or having had any legal education or training.
Second, that the testatrix had no known blood relatives, and as far as is known was a foundling who had been taken in and brought up by one Margaret Falvey who was a great aunt of the petitioner, Norma Winifred McGrath, and that the home of testatrix located on Bear Street, Syracuse, New York, had originally been owned by the said Margaret Falvey who had given it to the testatrix in addition to giving her the Falvey name. It might be well to note at this point that it was not *420 brought out in the previous proceedings before this court that such relationship existed between petitioner and the said Margaret Falvey. This relationship and these facts cause me to find that the petitioner was to some extent at least, a natural object of the bounty of the testatrix. I find that the life-long-relationship of the petitioner with the testatrix was mutually regarded as a “family” relationship even though they both knew that they were not blood relatives. As stated, these facts were not before onr former Surrogate on the previous determination.
Third, that although the testatrix had a great interest in education, she also had for many years before her death had an intense fear of being alone in her home at night, and had been in the custom of paying a succession of persons to come to her home evenings and spend the nights there. This obsession of the testatrix was so intense that she had, prior to Mrs. Mc-Grath’s taking over her care, offered to give her home and contents by will to at least one of those persons if they would agree to continue staying nights with her until her death. I also find that the testatrix was a very precise and careful person with regard to her property and business dealings. The testatrix had executed at least one prior will which had been drawn by her attorneys, one of whom, George Bond, Jr., testified as a witness on this hearing.
Fourth, that her last will which was admitted to probate was mistakenly represented to our former Surrogate to be a holographic will which all parties uoav stipulate it is not. I find that this will was written in the handwriting of petitioner, Norma Winifred McGrath, pursuant to dictation by testatrix. The only portion of this will in the handwriting of testatrix is her signature. I find that the testatrix had in her possession in her home a copy of her prior will drawn by attorney Bond and that in dictating her last "will she referred to this copy as to matters of form.
Fifth, I find that for a number of years prior to her death and up to and including the time of her death, testatrix had been renting and maintaining a safe-deposit box in the vault of the main office of the Lincoln National Bank and Trust Company of Central New York. She had given and revoked powers of attorney on this safe-deposit box to at least íavo persons prior to giving a power of attorney on this box to Norma Winifred McGrath on June 14, 1955. The execution of this last power of attorney was testified to by an officer of the said bank using the records of the bank which he had "with him in court.
*421 An officer of the Syracuse Savings Bank testified from the records of that bank that testatrix had had an account in said bank which was closed out in the amount of $7,387.13, on May 22, 1956, by transfer to a new account opened in said bank on the same date in the name of ‘ ‘ Alveretta Falvey or N. Winifred McGrath, Either or Survivor may draw” and that this joint account continued to the date of the death of testatrix. I find that by virtue of the opening of this joint account, petitioner was given authority by the testatrix to make deposits in and withdrawals from this bank account upon petitioner’s signature alone thereafter and up to the date of testatrix’ death. I also find that by the form of this last joint account the balance in it at the time of testatrix’ death became the absolute and sole property of Norma Winifred McGrath by operation of law and, therefore, did not constitute any part of the estate left by the testatrix except for purposes of taxation. I also find that subsequent to the date of opening this joint account, numerous and substantial deposits in and withdrawals from said account were made by Mrs. McGrath alone without any signature of testatrix.
Sixth, I find that approximately 10 days after the death of Miss Falvey, petitioner’s husband, at the request of his wife, went to Miss Falvey’s home on Bear Street and removed therefrom a metal box containing in addition to some fire insurance policies, over $60,000 worth of United States Government Series “E” and Series “G” Savings Bonds, all registered in the name of the testatrix, Alveretta Falvey. This box with its contents was delivered to petitioner, Mrs. McGrath the named executrix in the will, by her said husband.
I further find from the testimony of petitioner herself that at the time of the execution of the last will and for many months thereafter, none of these bonds were in the home of the testatrix but that they were all later removed from the safe-deposit box by the petitioner acting under her power of attorney. From the testimony of the bank officer using the records of the safe-deposit department, I find that the first visit to the safe-deposit box after Miss Falvey’s death was made after the probate of this will, by petitioner in the presence of an officer of the bank and a representative of the State Tax Department for the purpose of inventorying the box for tax purposes, and that none of these bonds were in the safe-deposit box at said time which, of necessity, causes me to find that at the time of the death of testatrix, these bonds were not in the safe-deposit box. I find that subsequent to Miss Falvey’s giving Mrs. Me *422 Grath power of attorney on this safe-deposit box and the transfer of the Syracuse Savings Bank account into the joint account with Mrs. McGrath, numerous stock certificates owned by Miss Falvey were removed from the safe-deposit box by Mrs. McGrath and sold through a broker, and the proceeds of said sales were deposited in the joint account at Syracuse Savings Bank. No stock certificates were found in the safe-deposit box on the occasion, of its inventory on the above-noted first visit after the death of Miss Falvey. In fact, nothing else of any material value was then found in said box.
From the above facts, I find that except for these United States Government Bonds, the unquestioned bequests in the last will together with the transfer of the savings bank account into the joint survivorship account would cause the entire estate of Miss Falvey to be exhausted. Therefore, if it is determined that these United States Government Bonds became the property of Mrs. McGrath pursuant to the ninth paragraph of Miss Falvey’s will, nothing would be left in the estate to establish the memorial fund mentioned in the next clause in the will.
The times of removal of these bonds from the safe-deposit .box were testified to by petitioner, Mrs. McGrath, and her husband, Harold McGrath. Mrs. McGrath, on numerous occasions attempted to further testify as to the. circumstances of the removal of these bonds and delivery of them by her to Miss Falvey at Miss Falvey’s home, and Miss Falvey there putting them into a metal box in which she kept certain papers; said box being located in a closet in Miss Falvey’s home.
This court ruled that Mrs. McGrath was barred from testifying as to these latter facts and circumstances pursuant to section 347 of the Civil Practice Act, and that she as the executrix of the estate could not ‘ ‘ open the door ” as to these transactions with the decedent on the grounds that in this proceeding her standing in addition to being executrix was that of legatee and a person highly interested in the transactions. We did allow her husband, Harold McGrath, to testify to the circumstances of the removal of these bonds from the safe-deposit box to the Bear Street home of Miss Falvey by his wife, and the delivery of them in his presence by Mrs. McGrath to Miss Falvey and Miss Falvey putting them into the above-mentioned metal box in her home. We further allowed the testimony of Mr. McGrath to the effect that after the last of the bonds in question were delivered by his wife to Miss Falvey and placed by Miss Falvey in the metal box in the closet, Miss Falvey said to Mr. McGrath that her affairs were then in order.
*423 I, of course, recognize that although Mr. McGrath may not be legally barred by section 347 of the Civil Practice Act from giving this testimony, he is nonetheless interested in the event because of being Mrs. McGrath’s husband and his testimony should, therefore, be carefully weighed. This I have done.
Seventh, I find that on numerous occasions the testatrix, Miss Falvey, told several disinterested persons who testified before us that she wanted Mrs. McGrath to have her entire estate after her death, for the reason that Mrs. McGrath and her family had been and would continue to take care of her until her death.
Eighth, I find that commencing in the month of March, 1955, at the request of the testatrix, Mrs. McGrath and members of Mrs. McGrath’s immediate family continuously stayed nights with the testatrix at her home and performed many things in connection with her care until the month of May, 1956. That in the month of May, 1956, the petitioner moved Miss Falvey from her home on Bear Street to the home of petitioner on Allen Street, Syracuse, New York, where the testatrix stayed continuously and was cared for by Mrs. McGrath and her family and had numerous visitors, until a week before her death, at which time she was moved from the McGrath residence to a nursing home upon the advice and recommendation of her physician who is now deceased, and that the testatrix died in said nursing home October 22, 1956. I find that at no time while Mrs. McGrath and her family were caring for her, was she under restraint or denied visitors or use of the telephone. Two witnesses, a man and his wife, testified that they were denied permission to visit Miss Falvey by the owner of the nursing home approximately 11 hours before Miss Falvey’s death, while she was in extremis. They also testified, that on this occasion, they heard a voice which sounded like Miss Falvey’s, calling “ Help, help, help.” To this testimony I can give no weight, for reasons which I believe are obvious.
Ninth, I find that in the month of August, 1956, the testatrix made inquiries as to what would be necessary in order to change the registration of these bonds in question from her name alone to her name jointly with Norma Winifred McGrath. This was established by the testimony of Harold McGrath, the petitioner’s husband. I have given careful weight to this testimony because of his obvious interest in the event.
Tenth, Miss Falvey’s will last prior to the one admitted to probate was produced by the witness attorney George Bond, Jr., and was offered and received in evidence as exhibit number 17. *424 That will contained a bequest and devise to the petitioner of Miss Falvey’s Bear Street home “together with all fixtures, furnishings and improvements therein and thereon The paragraph of Miss Falvey’s last will, which we are here construing, contains an addition which, in my opinion, could be material and significant. This consists of the addition after the words “ all fixtures and furnishings ”, the following words: “ and all property and articles of whatsoever nature found therein Another difference in the wording of these two wills is the elimination in the last will of the condition which had been formerly attached to the bequest to Mrs. McGrath, that either she or her daughter shall have cared for the testatrix and stayed with her as a companion at her home until her death. I find that the explanation of the bequest to Mrs. McGrath in the paragraph we are here construing does not constitute a condition on this bequest such as was the case in the prior will. These changes cause me to further find that during the period of time between the execution of the two wills, Miss Falvey’s regard for and confidence in Mrs. McGrath could have increased, which in turn could mean that by her last will Miss Falvey intended to leave Mrs. McGrath substantially more of her estate than she would have received under the prior will. Another significant difference in these two wills is that in the last one Miss Falvey in addition to indicating that she wished the memorial fund to be used for educational purposes, she for the first time mentioned an additional use which was to be for elderly women who are in need of hospitalization but arc without funds or families. As I view it, this change could mean that between the dates of the two wills, Miss Falvey’s interest in education had decreased and that her interest in the care of elderly women such as herself had increased. Testimony was given by a disinterested witness to the effect that Miss Falvey’s interest and confidence in the trustees of Syracuse University had decreased during the interval of time between the execution of these two wills. This, of course, could in part account for the changes in the form of the clause in question in the last will from the similar clause in her prior will by which she gave, devised and bequeathed all the rest, residue and remainder of her property to Syracuse University for the establishment of the fund therein mentioned for the purpose only of education of certain worthy female students.
From the wording of the last will, as compared with that of the prior will together with the testimony taken and the evidence produced, I find as facts that during the period of time *425 between the execution of these two wills, the intention of the testatrix had changed in that she intended to substantially increase and make unconditional her bequest and devise to Mrs. McGrath; that her interest in education had become materially outweighed by her desire to make sure she would be well taken care of until her death; that she had become just as much interested in elderly women who are in need of hospitalization but are without funds or families as she was in the subject of education; and that her trust and confidence in Mrs. McGrath’s discretion had come to exceed her interest and confidence in the trustees of Syracuse University.
I find from the carefully weighed testimony that Miss Falvey knew and approved of the removal of her stocks from the safe-deposit box and the sale of them and deposits of the proceeds in the joint savings bank account; and that a person of her intelligence, education and general business acumen would know that upon her death any balance remaining in said account would become no part of her estate, but would instead become the sole property of the survivor, Mrs. McGrath, by operation of law.
Lastly, I find as a fact, that the United States Government Savings Bonds in question were in Miss Falvey’s home on Bear Street at the time of her death, with her knowledge. In making this last finding, I have been influenced by the testimony of the officer of the Lincoln National Bank and Trust Company of Central New York, who testified as an expert on registered United States Government Bonds to the effect that there was no risk or danger in keeping in a home or in leaving registered bonds of these types in an empty home where they might be stolen or destroyed by fire, for the reason that it is a relatively simple matter to have the United States Government replace any such bonds that might be stolen or destroyed. This satisfies me as to why a careful, prudent person like Miss Falvey would have allowed these registered bonds to have been moved from the safe-deposit box to her home, and to have left them in her empty home during the time thereafter when she was staying at the McGrath residence and the nursing home where she died.
On the above findings of fact I make the following conclusions of law:
The law is well settled that in the construction of a will the intent of the testator, if it can be ascertained, controls. Such intent, if it is possible, must be found and ascertained from reading the “four corners” of the will. (Matter of Rooker, 248 N. Y. 361; Matter of Durand, 250 N. Y. 45; Matter of Stever, 273 App. Div. 344.) In addition to the language of the will, the *426 facts and circumstances surrounding the execution must also he considered in determining the intention of the testator. (Matter of Thompson, 217 N. Y. 111.)
Among my findings of fact made herein, I have found that Mrs. McGrath was to some extent at least a natural object of testatrix’ bounty. I hold that this is one of the facts and circumstances surrounding the execution of the will which must be considered in determining the intention of the testatrix. In my opinion, it is a fair conclusion that because of this fact, the testatrix intended to bequeath to Mrs. McGrath by this will more than just her home together with all fixtures, furnishings and improvements therein and thereon, which I have found as a fact that she had previously offered to at least one other person who could not be considered a natural object of her bounty.
The Thompson case, above cited, is authority for a presumption that in a will of personal property the intention of the testator is that the will shall speak as of the time of death, but that this presumption in the case of specific legacies may be rebutted where the nature of the property or thing bequeathed or the language used by the testator in making the bequest indicates that he intended it to speak as of the time of making the will. I find and rule that this presumption has not been here rebutted. The Thompson case cites Matter of Reynolds (124 N". Y. 388) and follows that case in affirming the principle that so long as the will contains a residuary clause, the rule of ejusdem generis shall apply. The law is also well settled that all canons of construction are subordinate to the prime consideration of all construction proceedings, that the intention of the testatrix as expressed in the will and in view of all the facts and circumstances under which the will was drawn is basic. (Matter of Fabbri, 2 N Y 2d 236, 239; Matter of Gautier, 3 N Y 2d 502, 509; Matter of Larkin, 9 N Y 2d 88, 91.) The above-cited cases also hold that if the testator’s intention is not clear, it must be gleaned not from a single word or phrase, but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which its provisions were framed. It is also fundamental that words are never to be rejected as meaningless or repugnant, if by any reasonable construction they may be made consistent and significant. (Matter of Buechner, 226 N. Y. 440, 443; Matter of Larkin, supra.)
In the construction of wills drawn by laymen, the courts have been less strict than in the case of wills drawn by attorneys. {Matter of Arents, 179 Misc. 879; Overheiser v. Lackey, 207 N. Y. 229; Matter of Valentine, 122 Misc. 486; Matter of Geis, 167 Misc. 357.) The courts have accordingly held that with *427 regard to wills drawn by laymen, the lay draftsman uses words in the vocabulary of ordinary life rather than in any technical narrow sense. (Matter of Sanborn, 180 Misc. 122.)
In following the above authorities and my finding of fact that neither the testatrix herein nor Mrs. McGrath to whom she dictated this will were lawyers or persons with legal education or training, I hold that we must not be as strict in this construction as we would be if this will had been drawn by an attorney. I hold that when in the paragraph of the will in question, the testatrix used the general words “ all property and articles ” following the specific words therein, it would not be reasonable to hold that she should have known that by using such words the rule of ejusdem generis would apply in their construction. I also hold that it would not be reasonable to expect that the testatrix in said clause would have used the words “ of whatsoever nature ” unless it was her intention that these words should be used in their ordinary vocabulary of life meaning of including everything regardless of its type or nature. I hold that a sympathetic reading of this will as an entirety and in view of all the facts and circumstances under which its provisions were framed reveals a “ dominant purpose or plan of distribution ”. Therefore, the individual parts of the will must be interpreted in the light of that purpose and be given effect accordingly, despite the fact that a literal reading might yield an inconsistent meaning because of the language or format employed. (Matter of Fabbri, supra; Matter of Larkin, supra.)
Based on my findings of fact herein and the above-cited authorities, I hold that the use by the testatrix of the words “ of whatsoever nature ” following the general words “ all property and articles ” indicates the intention of the testatrix that the United States Government Bonds here in question should pass under the bequest to Mrs. McGrath, providing they were found in her home at the time of her death. I believe that this holding is consistent with the holding in Matter of Thompson (supra) which was that in that case the testatrix had purposely left the description of the contents of her safe-deposit box vague and uncertain so that she might thereafter change the legacy involved by changing the contents of the box.
From a consideration of all of the facts and circumstances surrounding the execution of the will together with “ a sympathetic reading of the will as an entirety ’ ’, consideration of the words used by the testatrix in the clause of the will in question and in the following clause and my findings of fact herein based upon the testimony and evidence taken and produced, it is my conclusion that in changing the contents of Miss Falvey’s home *428 subsequent to her execution of this will, she was carrying out a ‘ ‘ dominant purpose or plan of distribution ’ ’ to assure that the McGrath family would take care of her until her death. Her intention in this regard should not be defeated by rules of construction. (Matter of Fabbri, supra; Matter of Larkin, supra.)
The rule of ejusdem generis which is only an illustration of the broader maxim, noscitur a sociis, can, in my opinion, also be disregarded in this case on an additional ground. As noted above, Matter of Reynolds (supra) holds that if a will contains no residuary clause, this rule need not apply. I hold that the will here being construed, does not contain a valid or legal residuary clause and that the clause which has been heretofore assumed to be á residuary clause is only precatory in effect because of the use by the testatrix of the words ‘ ‘ wish to establish ” coupled with the words “ and at the discretion of Norma Winifred McGrath, my executor ”. These words are very different from the definite mandatory words ‘11 give, devise and bequeath all the rest, residue and remainder of my estate ’ ’ which were used in the residuary clause of Miss Falvey’s prior will, a copy of which I have found was used by her as to matters of form in dictating this her final will. (Matter of Raumann, 64 N. Y. S. 2d 373, 379; Clay v. Wood, 153 N. Y. 134; Phillips v. Phillips, 112 N. Y. 197; Matter of Gardner, 140 N. Y. 122; Colton v. Colton, 127 U. S. 300.)
Although as I have above held, we cannot charge this testatrix with knowledge of technical and legal meaning of words or phrases, it is my opinion that any intelligent, well-educated layman would know that the words ‘ ‘ I wish to establish ’ ’ coupled with the words “ and at the discretion of ” a named person, are far less mandatory in their ordinary and usual meaning to a layman than is the legal phraseology “I give, devise and bequeath all the rest, residue and remainder of my estate ”.
On the above findings of fact and conclusions of law, it is the holding of this court that the United States Government Savings Bonds in question passed to and became the sole and absolute property of Norma Winifred McGrath under the bequest to her in the ninth paragraph of the will, even though this would entirely defeat the wish preeatorally expressed by the testatrix in the following paragraph of the will.
Pursuant to this holding, the motion of the Attorney-General for a compulsory accounting, on which decision has been reserved, is hereby denied. Petitioner should submit a decree and order accordingly.