In the Matter of the Estate of DANIEL UNDERHILL, Deceased.

Surrogate's Court, New York County, May 26, 1941.

*De Witt, Lockman & De Witt*, for the petitioner.

*Hurd, Hamlin & Hubbell* [*Emerson F. Davis, Lawrence Hunt, August J. Hovorka, Jr.*, and *John L. McGailey* of counsel], for Miriam Prentiss, individually and as administratrix, etc., respondent.

*Lester G. Gelinas*, for Ralph Leslie Cudlipp, respondent.

FOLEY, S. The single question in this accounting proceeding is one of construction of the will. The problem is whether the child (born out of lawful wedlock) of a deceased daughter of the life

beneficiary of a trust is the " issue of any deceased child " of the life beneficiary within the meaning of the will and the intention of the testator.

Daniel Underhill died August 15, 1891, leaving a will which had been executed on November 30, 1887, and a codicil dated February 28, 1891. In the third paragraph of his will he created a trust for the benefit of his adopted daughter, Lillie Underhill. He directed his trustees to pay her the income during her life, " and upon her death to transfer, pay over and divide the said principal sum equally to and among her children, and the issue of any deceased child, such issue of a deceased child to take *per stirpes* and not *per capita* the share which his, her, or their parent, would have taken had he, she or they been living." In the event that his adopted daughter should die without children " or the issue of a deceased child," he made alternative gifts of the remainder which, in the contingency provided for, would now vest in several grandnephews and grandnieces of the testator.

At the time of the testator's death, Lillie Underhill had no children. She married and on February 1, 1896, her only child, a daughter, was born. That daughter had but one child, the respondent in this proceeding. It is conceded that she was born out of wedlock on October 20, 1915. Although her mother subsequently married, it is also conceded that she never married the child's father, and that the child was never subsequently legitimatized.

The respondent contends that she is entitled to the entire remainder of the trust upon the theory that she is the sole " issue " of the deceased only child of the life tenant, within the meaning of the terms of the will. Her claim is questioned by the trustee. It is opposed by one of the grandnephews of the testator who would be entitled to a share as an alternative remainderman in the event that the respondent is determined not to be within the class of " issue " as used in the will.

The controversy centers around the words " the issue of any deceased child." Was it the testator's intention to comprehend within those terms only the lawful issue of a deceased child? Or did he intend to include all offspring and, in particular, this illegitimate child of a deceased only daughter?

The meaning to be ascribed to the word " issue " depends upon the intention of the testator as derived from the context of the will or such extrinsic evidence as may be considered. (*Palmer* v. *Horn*, 84 N. Y. 516, 519.) The test is what was included " in the nomenclature or vocabulary of the testator." (CULLEN, J., in *Dodin* v. *Dodin*, 16 App. Div. 42, 48; *Central Trust Co.* v. *Skillin*,

154 id. 227, 229.) His intention is to be construed in the light of the statutes and decisions applicable at the time he executed his will and codicil. (*Matter of Gould,* 172 Misc. 396, 403.)

It is to be presumed that the testator used words in their ordinary and commonly accepted meaning unless the context of the will or the relevant attending circumstances indicate a different sense. The word " issue " has been many times interpreted by the courts of this State and has been uniformly construed to mean lawful issue and to exclude illegitimate offspring. Such is the settled interpretation of the term even though the word in the will is not qualified by the adjective " lawful." (*Central Trust Co.* v. *Skillin, supra; Matter of Gould, supra; Braun* v. *Gilsdorff,* 126 Misc. 366.) Similarly, the words " child " and " children " have been held to comprehend only lawful or legitimate children. (*Matter of Cady,* 257 App. Div. 129, 130; affd., 281 N. Y. 688; *Bell* v. *Terry & Tench Co.,* 177 App. Div. 123, 124; *Collins* v. *Hoxie,* 9 Paige, 81; *Miller* v. *Miller,* 79 Hun, 197, 199; *Van Voorhis* v. *Brintnall,* 23 id. 260; revd. on other grounds, 86 N. Y. 18; *Gelston* v. *Shields,* 16 Hun, 143, 151; affd., 78 N. Y. 275; 4 Kent's Commentaries [14th ed.], 414, note [d].)

In other jurisdictions the great weight of authority supports the view that the word " issue " comprehends only legitimate issue. (*Wilkinson* v. *Adam,* 1 Ves. & B. 422, 462; 35 Eng. Reprint, 163; *Flora* v. *Anderson,* 67 Fed. 182; *Kemper* v. *Fort,* 219 Penn. St. 85; 67 A. 991; *Marsh* v. *Field,* 297 Ill. 251; 130 N. E. 753; *Brisbin* v. *Huntington,* 128 Iowa, 166, 174; 103 N. W. 144; *Doggett* v. *Moseley,* 7 Jones Law, 587; 52 N. C. 587; *Gibson* v. *McNeeley,* 11 Ohio St. 131; *Will of Scholl,* 100 Wis. 650, 659; 76 N. W. 616.) In States where it is given a wider interpretation (*Eaton* v. *Eaton,* 88 Conn. 269; 91 A. 191; *Rhode Island Hospital Trust Co.* v. *Hodgkin,* 48 R. I. 459; 137 A. 381; *Bennett* v. *Toler,* 15 Gratt. [Va.] 588), some statutory provision or reason of policy is usually assigned as the reason for the departure from the general rule.

In *Matter of Gould* (*supra*) I had occasion to consider this same question. In that case the will of the testator had been executed in 1885 and three codicils were executed between 1889 and the date of his death, December 2, 1892. Section 24 of the Domestic Relations Law, providing for the legitimization of children by the subsequent marriage of their parents, was not enacted until 1895. What was there said in respect of the construction of the word " issue " equally applies to the present proceeding: " Under the decisions applicable at the time of the making of the testamentary instruments, the word ' issue ' was clearly used by the testator as comprehending legitimately born children. Illegitimate children,

or even those born out of wedlock but legitimatized by a later enactment, were excluded from benefit."

There is no merit in the contention that subdivision 13 of section 83 of the Decedent Estate Law (derived from Revised Statutes [1859], part 2, chap. 2, § 20; Laws of 1855, chap. 547) requires any different interpretation of the words " issue " or " children." That statute provides that illegitimate children, in default of lawful issue, may inherit from the mother as if legitimate. It cannot seriously be urged that this statute would operate to alter the meaning of words of kindred used in a will so as to place illegitimate issue on an equality with lawful issue. Neither the letter nor the spirit of the statute would permit such a determination. Equally without merit is the argument that the statute is effective to bring within the term " issue," as used in a will or other document, the illegitimate children of a deceased female who has no lawful issue entitled to take.

The statute is one of distribution only, regulating intestate inheritance. It does not operate to change the status of the child from illegitimacy to legitimacy. Such legislation cannot be applied to control the construction of the word " issue " in a will. (*Brisbin* v. *Huntington, supra; Lyon* v. *Lyon*, 88 Me. 395; 34 A. 180; 45 Harv. L. Rev. 890, 894; 5 Mo. L. Rev. 98, 101.)

Moreover, it must be remembered that while this statute gives the illegitimate a limited right of inheritance from the mother, it gives neither her nor her descendants any right of inheritance through the mother. (*Matter of Cady, supra; Matter of Simpson*, 175 Misc. 718; *Matter of Lauer*, 76 id. 117.)

It remains to be considered whether there is anything in the entire context of the will itself or in the extrinsic evidence to warrant an interpretation different from that which the words have acquired by consistent construction by our courts over a long period of years.

There is no relevant evidence in the pending proceeding indicative of any intent on the part of the testator to include this child within the meaning of the words of kinship. Indeed, a mere comparison of the material dates demonstrates the impossibility of presenting such evidence. The daughter of the life beneficiary was not born until almost five years after the testator's death and nearly nine years after the execution of his will. The illegitimate child of that daughter was born twenty-four years after the testator's death. It is clear that evidence of the relationship between this child and Lillie Underhill Simpson can shed no light on the language of a will drawn more than a quarter of a century earlier. The situation here is far different from that in *Gelston* v.

*Shields* (*supra*); *Gardner* v. *Heyer* (2 Paige, 11), and *Dwight* v. *Gibb* (145 App. Div. 223). In those cases the existence of the illegitimate was known to the testator, and his recognition of their status within the family was established. To infer that the testator here ever contemplated such a situation as has actually developed would be to indulge in mere fanciful speculation.

Nor is there anything in the other parts of the will itself that would permit any different meaning to be ascribed to the language used in the paragraph creating the trust. The argument that the testator had adequately provided for his blood relatives and intended the remainder to pass to the kin of Lillie Underhill rather than to those of his own blood is refuted by the very language of the provision creating an alternative remainder.

The surrogate holds that the testator intended to comprehend within the term " the issue of any deceased child " only the lawful issue of such child, and to exclude therefrom illegitimate issue. The remainder, therefore, vests in the grandnephews and grandnieces who were designated to take in the eventuality which has occurred.

Submit decree on notice construing the will and settling the account accordingly.