In the Matter of the Accounting of the BANK OF NEW YORK, as Trustee of the Trust Created by MARY U. HOFFMAN, Deceased, Respondent.

ROSEMARIE MURPHY, as Guardian of JASON B. HAWTHORNE and Another, Infants, Appellant.

First Department, June 24, 1976

*James M. Montgomery* for appellant.

*Kenneth R. Page* of counsel *(Cadwalader, Wickersham & Taft,* attorneys), for respondent.

BIRNS, J. In this appeal from part of a decree entered in the Surrogate's Court, we are asked to decide whether the term "issue" in a will should be construed to include illegitimate grandchildren of an income beneficiary of a trust established under the terms of that will.

Mary Hoffman, the testatrix died in 1951. Her will established a trust for the benefit of her two cousins and provided that when the first of the two should die, his one-half share of the income should be paid for the remainder of the trust term "to his issue".

One cousin is still living; the other died in 1965, survived by a daughter and a son named Stephen. Stephen died in 1972 leaving two children, the infants represented by respondent-appellant herein. Stephen never married the mother of these children nor was an order of filiation entered. The Surrogate, however, determined that the two children were indeed the children of Stephen.

Relying on precedent, the Surrogate ruled that the two children, being illegitimate, could not inherit (*Matter of Flemm,* 85 Misc 2d 855; *Matter of Belton,* 70 Misc 2d 814; *Matter of Hendrix,* 68 Misc 2d 439) because the term "issue" as used in the will meant lawful issue only (*Matter of Underhill,* 176 Misc 737), and absent an intention to the contrary it could not be assumed that the testatrix intended illegitimate descendants as the object of her bounty (*Gelston v Shields,* 78 NY 275).

In this court, as she did below, respondent-appellant asserted that inasmuch as the word "issue" in the provision of the will under consideration was not qualified by the word "lawful", the question of legitimacy was not in decedent's mind when she made her will. In addition, the change in conventional attitudes towards illegitimates, as reflected in statutes and decisions, would warrant a construction of the word "issue" as including illegitimates, in the absence of contrary intent to exclude them.

Petitioner-respondent emphasizes that under settled case law, where the word "issue" appears in a will it will be interpreted to mean only lawful descendants in the absence of clear evidence of a contrary intent of a testator.

We recognize that precedents do hold that in the absence of an express intent to the contrary by a testator, the word "issue" presumes lawful issue and not illegitimate offspring. This presumption has its roots in an earlier society where there was no sense of injustice in the teaching that the sins of the fathers were to be visited upon their children and succeeding generations (Exodus, 20:4; Shakespeare, Merchant of Venice, act III, scene 5, line 1).

It is evident from these precedents that "presumed intent"

on the part of a testator to include lawful descendants only in the use of the word "issue" was designed to harmonize testamentary language with the social mores of the times. The judicial policy to afford legitimate children a preferred status in society has placed upon illegitimates the burden of demonstrating an intent on the part of a testator to include such illegitimates in his testamentary use of the word "issue".

Because of changes in societal attitudes and recent developments in constitutional law, we are of the opinion that, to the extent that precedents require this burden to be placed upon illegitimate claimants under a will, the law is not only outmoded, but discriminatory and should be rejected. We would reverse.

English legal history relates the disabilities suffered at law by illegitimates: "The early common law held that a bastard could not be a lawful heir, nor could one not born in lawful wedlock be regarded as legitimate * * * If a person laid claim to an estate as heir, and his heirship was disputed on the ground that he was born out of lawful wedlock, all proceedings in the common law courts stopped." The claim was then weighed by the ecclesiastical court. (Reppy and Tompkins, Historical and Statutory Background of the Law of Wills, p 74.)[1]

Bottomed upon the ancient concept that an illegitimate child was indeed *"filius nullius"*, i.e., a child of nobody, thus without legal status *(New-Haven v Newtown,* 12 Conn 165; *Dickinson's Appeal from Probate,* 42 Conn 491), many jurisdictions, like New York, held the word "issue" to mean only legitimate issue *(Page v Roddie,* 92 Okla 236; *King v Thissell,* 222 Mass 140; *Hardesty v Mitchell,* 302 Ill 369). Courts thus denied "illegitimate" claimants the right to share under provisions of wills not unlike the one before us.[2]

However, this archaic concept, with its moralistic overtones, was not accepted by all courts. Connecticut in 1914 first repudiated any common-law principle which limited the words

1. Today "in most states an illegitimate child can inherit from its mother and through its mother". (Reppy and Tompkins, Historical and Statutory Background of the Law of Wills, p 83; see, also, Reppy, The Ordinance of William the Conqueror [1072]: Its Implications in the Modern Law of Succession, p 61; EPTL § 4-1.2 [eff 1967]). For a comprehensive history of the law concerning illegitimacy, particularly the origin of the New York rule and statutory history, see the Fourth Report of Commission on Estates, NY Legis Doc, 1965, No. 19, p 235 *et seq.*

2. Most States have ruled that the word "children" in a will does not include illegitimates unless a contrary intent is shown. (See 95 CJS, Wills, § 652.)

"child" or "children" to those only of legitimate status, observing that "by reason of our recognition of the relation of parent to child between a mother and her illegitimate offspring, that no statute has been needed in this State to accomplish results which humanity and natural justice dictated and which could be arrived at elsewhere only through statutory intervention." *(Eaton v Eaton,* 88 Conn 269, 280.) And in a companion case the same court ruled that in the same will under consideration the words "issue of his or her body" did not reflect a limited use of those words, but included illegitimate issue, in the absence. of anything to indicate the use of the words in any other than their prima facie signification *(Eaton v Eaton,* 88 Conn 286).

New York courts, in the main, have not subscribed to the Connecticut view but have clung to the rule that where such words are used in a will, the word "child" means "lawful child," and the word "issue" means "lawful issue", in the absence of a manifestation of contrary intent. *(Central Trust Co. v Skillin,* 154 App Div 227.)

Research has disclosed only six cases in which the courts of this State have actually construed "issue" or "children", not qualified by "lawful" or in any other way, and not otherwise explained, so as to exclude illegitimates. *(Collins v Hoxie,* 9 Paige Ch 81 [Court of Chancery, 1841]; *Van Voorhiss v Brintnall,* 23 Hun 260 [General Term, 2d Dept, 1880]; *Miller v Miller,* 79 Hun 197 [General Term, 5th Dept, 1894]; *Braun v Gilsdorf,* 126 Misc 366 [Sup Ct, NY County, 1926]; *Matter of Gould,* 172 Misc 396 [Surrogate's Ct, NY County, 1939]; *Matter of Underhill,* 176 Misc 737 [Surrogate's Ct, NY County, 1941]).

It is noted that the earliest of these decisions is over 100 years old, and the most recent is 35 years old. Two are by the same Surrogate. Only two are appellate decisions, the latest of which is 1894. Apparently the precise question before us has never been decided by the Court of Appeals or this court.

Illustrative of varied expressions of the New York rule is the recitation found in *Matter of Underhill (supra,* pp 738-739): "The meaning to be ascribed to the word 'issue' depends upon the intention of the testator as derived from the context of the will or such extrinsic evidence as may be considered * * * The test is what was included 'in the nomenclature or vocabulary of the testator' * * * His intention is to be construed in the light of the statutes and decisions applicable at the time he executed his will and codicil."

The Surrogate rejected the argument, that legislation then in effect (Domestic Relations Law, § 24; Decedent Estate Law, § 83) would justify a view that the testator's intent was not to exclude illegitimate descendants from sharing under his will. The Surrogate ruled that this legislation could not serve "to control the construction of the word 'issue' in a will." *(Matter of Underhill, supra, p 740.)*[3]

However, there are a number of New York decisions wherein courts struggled to obtain relief from the common-law strictures to which we have referred. These decisions have construed the expression "lawful issue" in situations where the parents married or attempted to marry after the child's birth. *(New York Life Ins. & Trust Co. v Viele,* 161 NY 11 [1899]; *Olmsted v Olmsted,* 190 NY 458 [1908]; *United States Trust Co. v Maxwell,* 26 Misc 276 [1899]; *Central Trust Co. v Skillin,* 154 App Div 227 [2d Dept, 1912]; *Matter of Sheffer,* 139 Misc 519 [1931]; *Matter of Vought,* 29 AD2d 97 [1st Dept, 1967].)* Although these cases are not in point, reference to one or two may prove helpful.

For example, in *New York Life Ins. & Trust Co. v Viele (supra)* the court rejected claims by an adopted child to property left by will to "lawful issue", "lawful issue" being held to be "nothing more than a descendant."[4]

In *Matter of Vought (supra)* a child born illegitimate whose parents later went through a ceremonial marriage believed valid by the mother but in fact not valid because the father was already married, was determined by this court to be the "lawful issue" of the father, entitled to collect as such the benefits of a trust. This court said that under New York law in effect when the trust was created, "lawful issue" did not mean that the child must have been born of a valid marriage, but that he had been legitimatized by reason of the marriage, and once legitimatized he became "lawful issue". A child could be legitimatized by the subsequent lawful marriage of the parents under New York law then, and now. Furthermore, under section 1135 of the Civil Practice Act then in effect, a

---

**3.** Section 24 of the Domestic Relations Law provided for the legitimization of children by subsequent marriage of their parents. Subdivision 13 of section 83 of the Decedent Estate Law permitted illegitimates, in default of lawful issue, to inherit from the mother as if legitimate, which was the factual pattern of the case before the Surrogate.

**4.** It should be observed that today, under EPTL 2-1.3, derived from its predecessor, section 49 of the Decedent Estate Law, adopted children are included in any instrument, unless a contrary intention is expressed, in the class "issue", "lawful issue", "children", "descendants", etc.

child of a void or voidable marriage was to be considered the legitimate child of the parent capable to contract such marriage as long as one of the parties entered the marriage in good faith, and in addition the court could decide that a child of the said marriage was a legitimate child of the person incompetent to marry. This court held the child was the lawful issue of his father and therefore entitled to the benefits of the trust for the father's lawful issue.

The court noted a legislative intent not only to protect children born illegitimate, but to provide ways to make illegitimate children legitimate, and thereby give them rights similar to children born legitimate. This court rejected the definition in *New York Life Ins. & Trust Co. v Viele (supra)* that lawful issue meant nothing more than descendant. Otherwise, the court held, the term "lawful" would have no meaning.

However, in *Central Trust Co. v Skillin (supra,* pp 229, 230) the court said the words "lawful issue" have an accepted meaning, and that "All children are 'issue' of their parents, for the operation of natural laws favorable to the procreation and birth of offspring is not affected by the existence or nonexistence of a marital contract. But when this word relating to children is qualified by the adjective 'lawful,' it is ordinarily understood to mean those begotten and born in lawful wedlock and none others." Nevertheless, the court went on to say that at common law the words "child" and "issue", even when not qualified by "lawful", excluded all but the lawful "child" or "issue".

Our statutes do provide continuing evidence of legislative concern for illegitimate children as reference to various sections of the Estates, Powers and Trusts Law will demonstrate.[5]

While nothing in the EPTL provides that illegitimate children are "issue" for the purposes of taking under a will, rights of illegitimates to share in the estates of their kin are expand-

---

5. See Estates Powers and Trust Law:

Section 1-2.10 defines issue, unless a contrary intention is indicated, as the descendants in any degree from a common ancestor.

Subdivision (b) of section 3-3.3 dealing with anti-lapse clauses and limited thereto includes illegitimate children in the word "issue". An illegitimate child is the child of his father if he is entitled to inherit from his father under another section, i.e., section 4-1.2.

Section 4-1.2 (subd [a], pars 1, 2) dealing with descent and distribution through intestacy provides an illegitimate child is the legitimate child of his mother so that he can inherit from her and from his maternal kindred and is the legitimate child of his father so he can inherit from him if a valid order of filiation declaring paternity is entered timely.

ing. In fact, present attitudes appear to reject an inferior social or legal status for illegitimates.[6]

Appended hereto is a further listing of statutes, State and Federal, not represented as complete, but sufficient to demonstrate significant changes in societal attitudes vis-à-vis illegitimate children, each of which was directed toward the elimination of disadvantages, legal and social, suffered by illegitimates.[7] This parade of legislation was well underway, when in 1950, the testatrix executed the will before us.

The question raised is whether social and statutory changes require a reconsideration of the rule which presumed an

It must be observed that the practice commentary (McKinney's Cons Laws of NY, Book 17B) to this section (by Samuel Hoffman) notes that this section in extending the rights of illegitimates is intended to be confined to inheritance rights, but that it cannot be urged with any security on the basis of this section, that the term "issue", as defined in section 1-2.10 includes for general purposes of the EPTL, illegitimates as "descendants". (See *Matter of Underhill,* 176 Misc 737.)

Section 5-4.5 makes an illegitimate child the distributee of his father for distributions in wrongful death actions under EPTL 5-4.4 regardless of whether an order of filiation has been entered. Effective 1975.

**6.** Krause, Illegitimacy: Law and Social Policy. Hartley, Illegitimacy.

**7.** State and Federal Statutes

State statutes

| Statute | Purpose | Effective Date |
|---|---|---|
| Domestic Relations Law, § 24 | Effect of marriage of parents is to legitimatize illegitimate children, "but an estate or interest vested or trust created before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimatized". (But see new section 24, eff 1969.) | 1909 |
| Workmen's Compensation Law, § 2, subd 11 | " 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee; and a step-child or acknowledged illegitimate child dependent upon the deceased". | 1922 |
| General Construction Law, § 59 | In public papers and notices, the term "bastard" or "illegitimate child" shall not be used—rather, the term "child born out of wedlock" shall be used. | 1925 |
| Domestic Relations Law, § 111 | Adoption—consent needed of parents of child born out of wedlock. | 1938 |
| Domestic Relations Law, § 114 | Order of adoption. "The fact that the foster child was born out of wedlock shall in no case appear in such order". | 1938 |
| Public Health Law, § 4138 | New certificate of birth made when proof submitted that previously unwed parents of a person have intermarried subsequent to the birth of such person. | 1953 |

State statutes (cont'd)

| Statute | Purpose | Effective Date |
|---|---|---|
| Public Health Law, § 4135 | "There shall be no specific statement on a birth certificate as to whether the child is born in wedlock or out of wedlock". | 1954 |
| Domestic Relations Law, § 33 | Child of common-law marriage deemed legitimate. | 1958 |
| Domestic Relations Law, § 145 | Legitimacy of children not affected by annulment of marriage for various reasons—for example, use of force, duress or fraud. (Repealed and reenacted. See Domestic Relations Law § 24, eff 1969.) | 1962 |
| Domestic Relations Law, § 175 | Divorce. "In the absence of proof to the contrary, the legitimacy of all the children begotten before the commencement of the action must be presumed". | 1962 |

Federal statutes

| Statute | Purpose | Effective Date |
|---|---|---|
| US Code, tit 33, § 902, subd (14) | Longshoremen's and Harbor Workers' Compensation Act. Defines a child as including an acknowledged illegitimate child dependent upon the deceased. | 1927 |
| US Code, tit 42, § 416, subd (h), par (3), cl (A) | Social Security. Defines a child of an insured individual as one who the insured person has acknowledged in writing as his child or has been decreed by the court to be the father of such child. | 1935 |
| US Code, tit 8, § 1409 | Nationality and Citizenship. Children born out of wedlock. A child born out of wedlock of a service parent is also to be considered a national and citizen of the United States at birth. | 1952 |
| US Code, tit 8, § 1432 | A child born out of wedlock to an alien mother may become a citizen in certain circumstances when such mother is naturalized prior to the sixteenth birthday of said child. | 1952 |
| US Code, tit 38, § 101, subd (4), par (C) | Veterans Benefits Act. Defines a child as including an illegitimate if the father has acknowledged the child in writing or has been judicially decreed to be the father of such child. | 1958 |
| US Code, tit 38, § 765 | Payment of servicemen's life insurance under group policy. Benefits may be made to certain specified persons and defines "child" in the following manner: "An illegitimate child as to the mother, or an illegitimate child as to the alleged father" if he has acknowledged said child in writing or has been judicially decreed to be the father of such child. | 1971 |

intent by testatrix to exclude illegitimate descendants in sharing under her will.

Certainly, it cannot be said, as a matter of fact, that the testatrix was aware of these changes in societal attitudes as evidenced by the legislation referred to, or aware of community attitudes towards premarital sex or sex without marriage. Nor can it be said with any degree of assurance that at the time she executed her will she was provided with an explanation of the word "issue" which appeared on the typewritten pages of that document. It is just as likely that the word "issue" in her mind had a meaning no different from "progeny" or "offspring". (Webster's New International Dictionary, 2d ed, G. & C. Merriam Co., 1947.)

The will itself supports the conclusion that the bequest to her cousins was of paramount concern in establishing the trust. It is most unlikely that she gave any more than passing thought to the children who now, 25 years after her death, claim under her will, particularly as to whether or not they would be legitimate.

The presumed intent of the testator with which all the precedents are concerned, although represented as rebuttable, is in fact, in most cases irrebuttable.[8] The passage of time has

---

Federal statutes (cont'd)

| Statute | Purpose | Effective Date |
|---|---|---|
| US Code, tit 37, § 401 | Allowances. In connection with military pay and allowances the word "dependent" includes an illegitimate child whose alleged father, a member of the armed forces has been judicially decreed to be the father. | 1973 |
| US Code, tit 42, § 654 | Social Security. Provides that in a State plan for child support the State will undertake to establish the paternity of a child "born out of wedlock". | 1975 |

8. Gray and Rudovsky, The Court Acknowledges the Illegitimate: Levy v Louisiana and Glona v American Guarantee & Liability Ins. Co. (118 Univ of Pa L Rev 1, 26.) The authors observe: "A somewhat different set of problems is raised by decisions creating a presumption that a disposition to 'children' does not include illegitimates. While these decisions, like intestacy provisions, presume a discriminatory intent, the burden on illegitimates is less serious since the presumption is rebuttable. An illegitimate who had lived with his father, for example, could probably recover under a will leaving property to 'children'. If it can be shown that the presumption has a factual basis and if rebuttal is not made unreasonably difficult, this may be one classification based on illegitimacy which is still constitutional after *Levy*". Unfortunately the authors limited their example of a "rebuttable" presumption. In the case at bar we maintain that with the passage of time the presumption cannot be rebutted, and as we shall show herein, placing the burden of proof upon illegitimates is discriminatory.

made it impossible to establish that the testatrix did not intend to exclude illegitimate descendants from sharing under her will. This difficulty of proof was highlighted by a former Surrogate who said, "Indeed, a mere comparison of the material dates demonstrates the impossibility of presenting such evidence." *(Matter of Underhill,* 176 Misc 737, 740, *supra.)*

To continue to rely upon these precedents and then declare that in using the word "issue" in her will, testatrix intended only lawful issue and not illegitimates is to attribute to her a frame of mind not at all supported by the facts. We recognize that the testatrix should possess the broadest freedom of choice in making known the objects of her bounty, and that it is the duty of the court to ascertain the testatrix's intent. Nevertheless, the court should not under the guise of determining the testatrix's intent substitute its own preference as to the legatees who shall take under the will. (See Krause, Illegitimacy: Law and Social Policy, p 94.) There should be a demonstrable relation between judicial interpretation of a will and the testatrix's actual frame of mind. *(Matter of Bloomingdale,* 278 NY 435; *Matter of Niedelman,* 6 AD2d 291.) "Certainly the *automatic* exclusion of illegitimates from a bequest to a category such as 'children' would not be permissible. On the other hand, a bequest to *legitimate* 'children' would cut off any claim an illegitimate child might assert." (Krause, Illegitimacy: Law and Social Policy, p 94.)

We have been instructed that "[t]hat court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance of the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature." *(Dwy v Connecticut Co.,* 89 Conn 74, 99, Wheeler, J.)[9]

The Court of Appeals has stated, just recently: "* * * from

---

9. Wheeler, J. appears to have been the Justice who differed from the majority opinions in *Eaton v Eaton (supra)* and entered his own dissents relying on "precedent".

the earliest times the doctrine of *stare decisis* did not require a strict adherence to precedents in every instance * * *" *(Matter of Eckart,* 39 NY2d 493, WACHTLER, J.)

There are cases also where "the rule of adherence to precedent, though it ought not be abandoned, ought to be in some degree relaxed." (Cardozo, Nature of the Judicial Process, in Selected Writings of Benjamin Nathan Cardozo, [Margaret E. Hall ed 1947], p 171.)[10] In the case before us, we are of the opinion that rigid adherence to precedent will produce a result not warranted by facts but rather by adherence to an anachronistic rule.

Therefore we reject the rule that where the word "issue", standing alone, appears in a will, it will be interpreted to include within its meaning only lawful descendants.[11] We hold that the word "issue" should be construed to refer to legitimate and illegitimate descendants alike in the absence of an express qualification by the testatrix.[12]

Further justification for our decision today can be found in

---

10. The House of Lords, Britain's highest court, in 1966, enunciated its view on the rule of *stare decisis:*

"Their Lordships regard the use of precedent as an indispensable foundation upon which to decide what is the law and its application to individual cases. It provides at least some degree of certainty upon which individuals can rely in the conduct of their affairs, as well as a basis for orderly development of legal rules.

"Their Lordships nevertheless recognize that too rigid adherence to precedent may lead to injustice in a particular case and also unduly restrict the proper development of the law. They propose, therefore, to modify their present practice and, while treating former decisions of this House as normally binding, to depart from a previous decision when it appears right to do so". (Precedent in the Broome and Herrington Cases, 88 Law Q Rev, p 305.)

11. "Yet the lawyer's traditional respect for the preserved word encourages him to believe that words uttered in court—as in some ancient temple—are sacrosanct. Blessed with the ritual phrase *stare decisis* * * * they become 'precise'. It is on the strength of this belief that what is sanctioned by precedent is precise * * * that indifferent scraps of language enjoy an undeserved reputation for precision. Their only claim to distinction—let alone precision—is that someone has tagged them with an official or an unofficial citation." (Mellinkoff, The Language of the Law, p 375.)

12. In emphasizing that the use in the law of technical words like "heirs", "children", and "issue" are used repeatedly "without more to chart the course of construction", Mellinkoff *(supra,* p 405) points to the following bibliography as evidence of a wide variety of meanings in a multitude of factual situations: "22A *Words and Phrases* 553-629 (perm. ed. 1958), 18-20 (Supp. 1962), 'issue-descendants'; 2 *California Words, Phrases, and Maxims* (1960), 'issue-descendants'; 3 *Words and Phrases: Judicially Defined* 155-162 (1944), 32-33 (1960 Supp.), 'issue,' 'offspring'; 3 *Words and Phrases: Judicially Defined* 168 (1944), 'issue living,' 'issue of cousins'; 22A *Words and Phrases* (perm. ed. 1958), 'issue of marriage'; 3 *Words and Phrases: Judicially Defined* (Supp. 1960), 'issue of our marriage'; 22A *Words and Phrases* (perm. ed. 1958), 'issue of the body.' "

expanding concepts of the Equal Protection Clause (US Const, 14th Amdt). To construe "issue" in a will as excluding illegitimate children otherwise entitled to inherit thereunder, is, as stated before, nothing more than the substitution of judicial preference for a testator's intent. Such preference, under the guise of judicial construction, we believe, is State action. (See *Shelley v Kraemer,* 334 US 1.) State action is proscribed if it promotes discrimination based upon an unconstitutional classification *(Levy v Louisiana,* 391 US 68; *Glona v American Guar. Co.,* 391 US 73; *Weber v Aetna Cas. & Sur. Co.,* 406 US 164; but cf *Labine v Vincent,* 401 US 532).

In none of the cases just cited was the Supreme Court applying constitutional scrutiny to the terms of a will. The court, however, was seeking to determine whether Louisiana legislation providing for the recovery or distribution of death benefits unconstitutionally discriminated against illegitimate children.

In holding that illegitimates are covered by the Equal Protection Clause, the Supreme Court of the United States struck down as discriminatory a statute which provided that illegitimate children did not have the same right to share in the death benefits under a Louisiana workmen's compensation statute as did legitimate children.

Observing that this differentiation and classification could not be related to any legitimate State interest, that court said: "Imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust— way of deterring the parent." *(Weber v Aetna, supra,* p 175.) Such discrimination "is clearly invidious" *(Labine v Vincent, supra,* dissenting opn of BRENNAN, J., p 558).

Because of the expanding concept of equal protection we should not adhere rigidly to the rules enunciated in the cases cited as precedents herein. To do so would require us to hold that illegitimates enjoyed a lesser status than legitimate children before the law in cases such as the one before us.[13]

In rejecting archaism, we do no more in this appeal than

13. For a general discussion of the effect of the Equal Protection Clause on illegitimacy as a classification, see Krause, Illegitimacy: Law and Social Policy *(supra,* chs 2 and 3, p 126).

hold that the word "issue" as used by testatrix in her will should have no meaning other than that ordinarily and customarily imputed to persons in its usage in the absence of any manifestation of an intent to the contrary. Thus, the test set forth in *Matter of Underhill (supra)* is still viable as long as it is not used to disguise judicial preferment. Accordingly, the law will not be required to discriminate against children labeled illegitimate through no fault of their own.

A remand in this case is not necessary inasmuch as the parties were before the Surrogate on an agreed statement of facts. Accordingly, the decree of the Surrogate should be reversed on the law and on the facts and upon a reading of the will, it is determined that the testatrix intended in her use of the word "issue" in her will legitimate and illegitimate descendants. The will is so construed with costs to all parties appearing and filing briefs payable from the trust estate.

MURPHY, J. P., CAPOZZOLI, NUNEZ and LYNCH, JJ., concur.

Decree of the Surrogate's Court, New York County, entered on September 23, 1975, so far as appealed from, unanimously reversed, on the law and on the facts, and upon a reading of the will, it is determined that the testatrix intended in her use of the word "issue" in her will legitimate and illegitimate descendants. The will is so construed with $60 costs and disbursements of this appeal to all parties appearing and filing briefs payable from the trust estate.