Bertram R. Gelfand, S.
In this accounting proceeding the parties stipulated that all other issues be held in abeyance pending the construction of paragraph "second” of the will dated February 8, 1973 which provides: "second: In the event that at the time of my death, my wife, urlah taitt, whose present whereabouts are unknown to me, and I have not been divorced, then, and in that event, it is my wish and will that she be not permitted to share in my estate to any greater extent than she would have shared, had I died intestate.”
Respondent Uriah Taitt was cited by publication because *588 her whereabouts were unknown. After a guardian ad litem was appointed to protect her interests, she appeared by attorney of her own choice who represented her at the hearing. The executrix contends that the respondent is entitled to receive nothing pursuant to the terms of the will. Respondent asserts that she is entitled to an intestate share which in this case, since the decedent had no issue or surviving parent, amounts to the entire estate.
The function of the court in a construction proceeding is to ascertain the actual intention of the testator from a reading of the instrument as a whole and in view of all the facts and circumstances under which the provisions of the will were framed (Matter of Kosek, 31 NY2d 475, 483; Matter of Flyer, 23 NY2d 579, 584; Matter of Thall, 18 NY2d 186, 192; Matter of Dammann, 12 NY2d 500 504-505; Matter of Larkin, 9 NY2d 88, 91; Matter of Fabbri, 2 NY2d 236, 240). In ascertaining the testator’s general testamentary scheme, paragraphs "third” through "fifth” of the will are pertinent. Paragraph "third” provides that any real estate owned by the decedent should be sold and the proceeds distributed to his residuary legatees. Paragraph "fourth” states that "For reasons which to me are good and sufficient,” no bequest is being made to any of decedent’s relatives not mentioned in the will. Paragraph "fifth” the residuary clause divides the estate among decedent’s sister (20%), two nieces (30% collectively) and the executrix, a friend (50%).
Evaluation of the inartful language set forth in paragraph "second” leads to the conclusion that this paragraph is not dispositive. It merely expresses a "wish” and a "will” that the respondent wife is in no event to share in decedent’s estate to a greater extent than an "intestate” share. At the time the will was executed, absent disqualification pursuant to EPTL 5-1.2, the respondent widow would be decedent’s only distributee under EPTL 4-1.1. In the event of intestacy she would be entitled to the entire estate. It is obviously pointless for a testator to express a "wish” that an individual should not be permitted to share in an estate to a greater extent than all of the assets of the estate. Under no circumstances could anyone receive more than everything. The instrument itself suggests that a bequest of the entire estate to the respondent widow is totally divorced from any intent of the testator since such an intent would be totally inconsistent with the other dispositive provisions of the will for the benefit of the other named *589 beneficiaries. Accordingly, the language of paragraph "second,” viewed in the context of the instrument, presents a clear ambiguity.
In the case of an ambiguity extrinsic evidence as to the background facts and circumstances may be admitted in evidence in the search for the true intent of the testator (Matter of Goldstein, 46 AD2d 449, affd 38 NY2d 876). The testimony of the draftsman has been accepted by the courts not in contradiction of the testamentary instrument but in clarification of what the draftsman was attempting to accomplish in applying legal phraseology in an effort to express the intent of the testator. As succinctly stated by the Appellate Division, First Department in the recent case of Matter of Hoffman (53 AD2d 55, 64), citing Matter of Bloomingdale (278 NY 435); Matter of Niedelman (6 AD2d 291): "There should be a demonstrable relation between judicial interpretation of a will and the testatrix’s actual frame of mind.”
In this matter the extrinsic evidence established that the decedent and respondent were married in 1945. They resided in Manhattan with the respondent’s mother until approximately 1954. At that time, decedent moved to a new home he had purchased in the Bronx. The testimony of friends and fellow parishoners of decedent indicates that respondent refused to move into the new home with the decedent. From 1955 until his death on June 12, 1973 at the age of 73, decedent had not spoken to respondent, had not seen her nor did he know her whereabouts. It was established by the testimony of both the attorney-draftsman and decedent’s counsel in the divorce proceeding pending at the time of decedent’s death that they learned from decedent in early 1973 that he had retained counsel to prosecute an action for divorce approximately three years earlier. He was unhappy with the lack of progress made by his attorney in pursuing the matter. He was particularly concerned because he was now in ill health and did not wish his wife to benefit from his death. Prior counsel in the divorce proceeding was discharged. New counsel expeditiously completed jurisdiction by service by publication. A certificate of no necessity, as was then required by the law, was obtained from the conciliation bureau, and the divorce proceeding was placed on the calendar for June 5, 1973. On that date decedent was confined in a hospital. His request to be brought to court by ambulance was not honored and he expired seven days later without the divorce proceed *590 ing ever being tried. The pending divorce proceeding sought relief upon an allegation of abandonment based upon the refusal of the spouse, whose whereabouts were unknown, to live with decedent after he purchased a new home in 1954. The allegations in that proceeding are of course not conclusive proof of the facts stated therein. However, these allegations, which were made within a month of the execution of the will, are relevent to the testator’s state of mind on the issue of the extent to which he intended respondent to share in his estate.
The attorney-draftsman testified with great candor that while he had drafted approximately 100 wills in his career, this was not his area of expertise. Although admitted to practice in 1937, he continued working until 1945 as a probation officer in the Court of Special Sessions. He then engaged in general practice for 20 years followed by service as a referee in compensation until his retirement in 1971. When consulted by decedent with reference to drafting a will he had advised him that the law "forbade” lawyers from drawing a will that did not mention a wife once the lawyer had been advised that a wife existed. It was upon this advice that he told the testator that the instrument had to be in the form set forth. The draftsman based his concept of the law upon his recollection of a lecture he had attended in law school in 1930. He had not had his knowledge of the law of estates updated in any way since that time. It was in reliance upon his recollection of the information he recalled from law school that the draftsman attempted to prepare an instrument on behalf of the testator which would carry out as best the law allowed the desire of testator to prevent respondent from sharing in his estate.
It is well established that the skill of the draftsman must be considered in determining whether technical language shall be construed as a word of art or from a layman’s point of view (Overheiser v Lackey, 207 NY 229, 233; Matter of Latimer, 19 AD2d 270, 274; 7 Warren’s Heaton on Surrogates’ Courts, § 18, par 5).
A corollary to this rule was set forth in Matter of Goldstein (46 AD2d 449, 452, supra) wherein the court stated: " 'When the testatrix’ intention is manifest from the context of the will and surrounding circumstances but is endangered and obscured * * * by inept and inaccurate modes of expression, the court, to effectuate the intention, may change or mold the language. (Dreyer v. Reisman, 202 N. Y. 475; Eidt v. Eidt, 203 *591 N. Y. 325; Matter of Gallien, 247 N. Y. 195; Matter of Jackson, 258 N. Y. 281.)’ (Matter of Birdsell, 271 App. Div. 90, 93-94, affd 296 N. Y. 840.)” In the instant case, the testimony unquestionably establishes that neither the testator nor the draftsman comprehended the legal import of an intestate share nor the distinction between the possible rights of a surviving spouse in intestacy as distinguished from a spouse’s right of election.
The instrument at issue rather than expressing love and affection for the respondent, reflects a determined purpose to exclude her as a beneficiary of his estate. Not only was decedent contemplating divorce, he was very actively engaged in completing a divorce. To the extent that the instrument is ambiguous, it is evident from the surrounding facts and circumstances that in regard to the respondent, decedent intended to do what the law compelled him to do, and no more. The testimony leaves no doubt that the word of art which the attorney-draftsman sought to employ and should have employed was "elective share” and not "intestacy.” It is noted that the term "elective share” and the right of election, as it is now known in the law, was not existent when the draftsman was learning the law of estates in law school. The circumstances of this case are poignantly illustrative of the mischief which flows from the proclivity of some counsel to underestimate the basic specialized expertise necessary for the proper drafting of testamentary instruments.
It is concluded that if there is to be any "demonstrable relation between [the] judicial interpretation of [this] will and the [testator’s] actual frame of mind” (Matter of Hoffman, 53 AD2d 55, supra) paragraph "second” must be construed as providing that in no event shall the respondent receive more than an elective share from the decedent’s estate. This does not constitute a conclusion that the paragraph affirmatively grants a bequest to the respondent equal to an elective share, since the language of the paragraph is totally devoid of any dispositive intent but merely constitutes an expression of a limiting desire by the testator that if he is not divorced from his wife, she get no more than the law mandates. Both paragraph "second” and paragraph "fourth” of the will are in the nature of a negative bequest or a disinheritance clause (see Matter of Eckart, 39 NY2d 493; Matter of Cairo, 35 AD2d 76, affd 29 NY2d 527; Matter of Newkirk, (86 Misc 2d 930); EPTL 1-2.18). The negative bequest herein cannot be the basis *592 for a finding of an affirmative legacy. Since respondent has not filed a right of election and the parties have not placed in issue whether such notice of election could be served and filed at this late date (EPTL 5-1.1, subd [e]), or whether respondent is precluded from electing against the will by dint of an abandonment (EPTL 5-1.2, subd, [a] par [5]), no determination is made as to the rights of respondent-widow, if any, pursuant to EPTL 5-1.1.
Objections to the account, if any, are to be filed no later than 10 days after the entry of the decree herein. The guardian ad litem having filed his report and completed his services prior to this hearing, the decree shall contain a provision for his compensation. The pending claim of the executrix against the estate is set down for trial on September 13, 1976 at 9:30 a. m., at which time proof will be taken as to such claim and a hearing will be held as to any objections that may be interposed to said account.