OPINION OF THE COURT
Arthur E. Blyn, S.
This proceeding presents the ever-recurring question of the rights of nonmarital children to inherit from their fathers.
At the outset the court wishes to express criticism of the use of the word "illegitimate” as applied to children. Not only is this term, when used in connection with children, repugnant to this court but its use in any local law, ordinance or resolution or in any public or judicial proceeding or in any process, notice, order, decree, judgment, record, public document or paper, is a violation of law (see General Construction Law, § 59).
Despite this fact Judges, legal writers and others continuously use that term when writing about children born out of wedlock.
In this decision wherever the words "nonmarital child or children” are used the references apply to the prohibited phrase "illegitimate child or children.”
In this construction proceeding the problem presented involves the right of Laura Combes, an alleged nonmarital child, to intervene as a party. The question for construction involves the right of adopted children to take as income beneficiaries under a trust.
The background facts are that Edgar M. Leventritt died on May 31, 1939 survived by his wife, Rosalie, his son, Marion Victor, and his daughter, Rosalie Leventritt Berner. Edgar M. Leventritt’s will, executed in 1935, was admitted to probate on June 29, 1939. A trust was established for his "children” within the meaning of article Fourth of that will. Marion Victor, the son, died in 1968 survived by three adopted children.
In 1953, Lucille Combes, the mother of Laura, brought a filiation proceeding seeking maintenance, support, etc., for Laura, against Marion Victor in the Court of Special Sessions pursuant to the then section 122 of the Domestic Relations *600 Law (now § 517 of the Family Ct Act) and, the then section 64 of the New York City Criminal Courts Act.
During the pendency of the paternity proceeding Lucille Combes and Marion Leventritt entered into an agreement of settlement and compromise providing for the payment of $10,000 to the use and benefit of the infant Laura, to be used for her support and maintenance, and an additional sum of $2,500 to Lucille Combes for her medical and other expenses incident to her pregnancy and the birth of Laura. The $10,000 payment was directed to be deposited in a savings bank to be designated in the decree of the Surrogate’s Court, New York County. This settlement agreement was executed on January 4, 1954 and was approved by the Assistant Corporation Counsel, and the Second Deputy Commissioner of Welfare, of the City of New York. Justice Herman Hoffman of the Court of Special Sessions thereafter, on January 6, 1954, confirmed and approved the afore-mentioned settlement and further ordered and decreed: "that other remedies of the mother and child and of other persons acting for or on their behalf for support, education and maintenance and other actions under section 122 of the Domestic Relations Law and section 64 of the New York City Criminal Courts Act, be and the same hereby are forever barred in this and any other jurisdiction” and further ordered and decreed that the complaint be dismissed with prejudice. (Lucille Combes was appointed a general guardian of the person and property of her daughter, Laura, by decree of the Surrogate’s Court dated December 29, 1953 and on her behalf accepted the proceeds of the settlement.) .
At this time, 23 years after Laura’s birth and 8 years after Marion Victor’s death, Laura Combes now seeks permission to intervene so that she may be afforded an opportunity to attempt to prove that she is the nonmarital child of Marion Victor Leventritt. The trustees and the daughter of Edgar M. Leventritt vehemently oppose intervention by Laura Combes.
The first argument advanced by the opposing parties is that Laura is barred under either the doctrine of res judicata or "collateral estoppel” from intervening in the construction proceeding to attempt to establish that she is the daughter of Marion Victor Leventritt. Laura responds with the argument that (1) she was never a party to the paternity proceeding and (2) since the issue of paternity was never adjudicated before the Court of Special Sessions it could well be raised in this proceeding.
*601 The court in arriving at its decision does not reach the question as to whether Laura is barred from intervening by the doctrine of res judicata or "collateral estoppel”.
The parties objecting to Laura’s intervention further argue that Laura is barred by EPTL 4-1.2 which provides in part that: "(2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
"(3) The existence of an agreement obligating the father to support the illegitimate child does not qualify such child or his issue to inherit from the father in the absence of an order of filiation made as prescribed by subparagraph (2).” (Note the use of the word "illegitimate” in this statute despite the bar against its use by section 59 of the General Construction Law.) It should be noted that both the former section 122 of the Domestic Relations Law (which was in effect at the time of the birth of Laura and the afore-mentioned filiation proceeding) and its successor section 517 of the Family Court Act, required that the paternity of a child be established within two years of the birth of the child. The objectants to intervention argue that this statute of limitations effectively bars Laura from intervening.
Laura responds that a recent decision of the Appellate Division, First Department, in Matter of Hoffman (53 AD2d 55) holds otherwise and that further, EPTL 4-1.2 and its predecessors apply only to inheritances in situations of intestacy.
It seems clear that although the said EPTL 4-1.2 deals with intestacy, it was also considered to apply in principle to estates passing by will or devise. This was indicated in the report of the Bennett Commission, Fourth Report, on pages 265-266. As indicated by the Bennett Commission the restrictions under EPTL 4-1.2 against suits by purported nonmarital children have a twofold purpose both as to inheritance by will as well as by intestacy; and the prevention of fraudulent claims and serious difficulties in the administration of estates.
The public policy reflected in the enactment of the Statute of Limitations spelled out in EPTL 4-1.2 has been confirmed by the Court of Appeals in its reaffirmation of its decision in Matter of Lalli (38 NY2d 77, affd on reconsideration 43 NY2d
*602 65). This reaffirmation on November 17, 1977 occurred after the remand by the United States Supreme Court for further consideration in the light of that court’s holding in Trimble v Gordon (430 US 762).
In view of the Court of Appeals’ rejection of the challenge to the constitutionality of EPTL 4-1.2 and the views expressed by the Bennett Commission which hold that the Statute of Limitations contained in EPTL 4-1.2 apply to intestate as well as testate inheritance rights of nonmarital children, it would appear that on this basis alone Laura is barred from intervening. However, this court believes that there is a more cogent reason for its decision.
Laura, at the time that her application for permission to intervene was made, was 23 years of age and in response to the charge of laches on her part in connection with her claimed right to participate argues that she had no such right until Matter of Hoffman (53 AD2d 55, supra) was decided by the Appellate Division. She thus makes Matter of Hoffman the touchstone of her application for permission to intervene. The court agrees with her evaluation only in one sense. Assuming, for the sake of argument, that she were given the right to intervene and further that upon such intervention she was able to prove that she is the nonmarital child of Marion Victor Leventritt, she would then be faced with the next hurdle and that would be to establish that under the will of Edgar M. Leventritt she would come within the meaning and intention of Edgar when he used the word "children” in establishing the trust created in his will.
It thus appears necessary to decide this aspect of Laura’s problem although not directly raised by her. That is whether, assuming that Laura proves that she is the nonmarital child of Marion Victor Leventritt, she is a beneficiary of that trust as a child of Marion Victor Leventritt.
Matter of Hoffman, involved a construction proceeding which was brought to determine whether nonmarital children came within the meaning of the word "issue” used in a will. In Matter of Hoffman, there was no dispute as to the paternity of the alleged nonmarital children. So at the outset it is clear that as to paternity there is no resemblance between Laura’s case and Matter of Hoffman. In Laura’s case the question of paternity is vigorously contested. The relevance of Matter of Hoffman is therefore whether the words "issue” or "children” or "child” include a nonmarital child.
*603 The courts have said that it is the intention of the testator that controls. This is a basic rule of construction that has been concurred in over and over and over again. Normally the intention of the testator must be ascertained from the instrument itself. It is the duty of the court to use every effort to ascertain the intention of the testator and to see that his desires are carried out. (Kane v Astor, 9 NY 113; Matter of Fabbri, 2 NY2d 236.) It follows from what has just been said that the instructions of every will in the final analysis stand by themselves, depending upon the language used and the circumstances surrounding the testator (Matter of Low, 136 Misc 532, revd on other grounds 232 App Div 414, affd 257 NY 613). Such intent, if it is possible, must be found and ascertained from a reading of the "four corners” of the will and, in addition to the language of the will, the facts and circumstances surrounding the execution must also be considered in determining the intention of the testator. (Matter of Falvey, 29 Misc 2d 417, revd 15 AD2d 415, affd 12 NY2d 759.) Another factor to be considered is that the testator is presumed to know the law and to make his will in view of the existing statutes at the time of its execution (Matter of Hoagland, 125 Misc 376).
The court, in Matter of Hoffman, was of course well aware of these rules and in its efforts to arrive at the decision it rendered had to deal with prior decisional law which construed "issue” or "children”, not otherwise explained, to exclude nonmarital children. The Appellate Division in Hoffman found six cases, the oldest 100 years and the most recent which was 35 years old. The Appellate Division also went on to note that two of these cases were by the same Surrogate and that only two were Appellate Division decisions, the latest of which was 1894, and further that the question had never been decided by the Court of Appeals or the Appellate Division, First Department.
The court in Matter of Hoffman, however, states the New York rule as set forth in Matter of Underhill (176 Misc 737, 738-739) as being: "the meaning to be ascribed to the word 'issue’ depends upon the intention of the testator as derived from the context of the will or such extrinsic evidence as may be considered. * * * The test is what was included 'in the nomenclature or vocabulary of the testator’. * * * His intention is to be construed in the light of the statutes and the *604 decisions applicable at the time he executed his will and codicil.”
The court in Matter of Hoffman then called attention to the fact that the statutes of New York provided continuing evidence of legislative concern for nonmarital children and, although admitting that nothing in the EPTL provides that nonmarital children are "issue” for the purpose of taking under a will, that the rights of nonmaritals to share in the estates of their kin are expanding. The court went on further to state that in fact present attitudes appear to reject an unfair social or legal status for nonmaritals and went on to append a list of statutes, State and Federal, setting forth the demonstrated changes in the attitude of society towards non-marital children.
The court welcomes the continuing evolving law which has eliminated discrimination against nonmarital children in certain areas such as wrongful death actions, workmen’s compensation, the right to inherit from the mother, Social Security benefits, citizenship rights, veterans’ benefits. However, it also is of the opinion that the duty of a Surrogate to carry out the intention of a testator overrides any other considerations.
This court believes that an important distinction must be drawn between Matter of Hoffman and other litigation involving this subject. The Appellate Division in Hoffman stated (53 AD2d 55, 61, supra): "this parade of legislation was well underway, when in 1950, the testatrix executed the will before us.”
In the light of that statement it seems clear to this court that any wills executed later than 1951 (the year the will was drafted in Matter of Hoffman) which include such words as "issue”, "descendants” or "children” will be deemed to include nonmarital children unless the testator expressly excludes nonmarital children. The corollary of this conclusion is that in the opinion of this court as to wills executed prior to 1950 the old rule will still prevail that unless expressly included non-marital children do not take under words such as "issue”, "descendants” or "children”.
It should be noted in the Leventritt case that the will which created the trust, subject of this litigation, was executed in 1935. At that time there were no statutes on the books which gave nonmarital children any rights in connection with their fathers’ property, causes of action, etc., and certainly there is no question that this aspect of the law reflected the over *605 whelming societal view and attitudes towards nonmarital children at that time. It should be further noted that the testator, Edgar M. Leventritt, was an experienced lawyer and therefore could not have been said to have been a lay person for whom a will was drafted and to whom the terms used, including the word "children”, would have a legal meaning unknown to him.
Unless the courts have arrived at that point where the basic rule of construction of a will which is the determination of the intent of the testator is to be scrapped then the only way that the intention of Edgar M. Leventritt could be deemed to include a nonmarital child when he used the word "children” would be to substitute the rule of judicial preferment for that of the testator’s intent. This court cannot conceive that Edgar M. Leventritt in his will executed in 1935 could have intended the word "children” to include a nonmarital child.
This court, despite its preliminary statement expressing approval of the goal of granting nonmarital children equal rights with marital children, is nevertheless constrained by what it believes to be its paramount duty — that is to carry out the intention of the testator to arrive at its determination that Laura, even if proven to be a nonmarital child of Marion Victor Leventritt, could never have been intended by Edgar M. Leventritt to be included as a beneficiary of his trust when he used the word "children” in 1935.
In light of the conclusions set forth herein the court believes that it has no choice but to deny the application of Laura Combes to intervene in the construction proceedings before this court.