OPINION OF THE COURT
John D. Bennett, J.
On July 6, 1978 Irene Louridas filed a petition for letters of administration as decedent’s daughter, alleging that he had died intestate. Thereafter, on August 7, 1978, Alice Angelis, the surviving spouse and executrix named in a will of Nicholas Angelis, offered such will for probate and challenged Irene’s status as an alleged daughter to file objections to the probate of the will.
It is conceded that the objectant’s status as a distributee is based upon an order of paternity which was obtained during the lifetime of the decedent but not until 1966, which was some 16 years after her birth in 1950. The proponent claims the filiation order was not timely obtained as required by EPTL 4-1.2 (subd [a], par [2]) which provides that "[a]n illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.” The objectant contends that the latter restriction, requiring the proceeding be instituted within two years of birth of the child, is unconstitutional.
EPTL 4-1.2 re-enacts without substantive change section 83-a of the Decedent Estate Law, which became law in 1965 under the sponsorship of the Bennett Commission. Prior to the enactment of section 83-a of the Decedent Estate Law, *3 inheritance rights of an illegitimate were fixed by subdivision 14 of section 83.of the Decedent Estate Law under which the illegitimate was not entitled to inherit from the putative father and was allowed to inherit from the mother only where there were no lawful issue. The Temporary State Commission on the Law of Estates intended to grant to illegitimates, insofar as practicable, inheritance rights on a par with those enjoyed by legitimate children, while protecting innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs. This end was achieved by equating legitimates and illegitimates for the purpose of inheritance from the mother and maternal kindred, and granting the illegitimate a limited right of inheritance from his father subject to statutory safeguards. (See Commission on Estates, Report No. 1.8A, 1964, p 233.) One safeguard imposed by the Legislature to protect innocent men from unjust accusations in paternity claims was the requirement of a court order establishing paternity during the lifetime of the father. The validity of this provision requiring entry of an appropriate order of filiation before an illegitimate can take from its father was upheld by the Court of Appeals in Matter of Lalli (38 NY2d 77; judgment vacated and case remanded for reconsideration in light of Trimble v Gordon, 430 US 762, in 431 US 911; on remand original decision adhered to in 43 NY2d 65). A second safeguard was the requirement that the paternity proceeding be instituted during the pregnancy of the mother or within two years from the birth of the child. Inasmuch as the Court of Appeals upheld the provision of the statute which forecloses the claim as to status as a distributee because no order of filiation was made during the lifetime of his father, the court did not reach or consider the challenge to the latter clause of the statute which requires the paternity proceeding be instituted during the pregnancy of the mother or within two years from the birth of the child (Matter of Lalli, 43 NY2d 65, 68, n 1, supra).
The cases reflect a distinct trend toward expanding the rights of illegitimates (Matter of Johnson, 75 Misc 2d 502; Matter of Ortiz, 60 Misc 2d 756 [statutes barring illegitimates from sharing damages sustained by reason of the wrongful death of their father held to deny illegitimates equal protection of the law and thus unconstitutional]; Webster v Aetna Cas. & Sur. Co., 406 US 164 [Louisiana Workmen’s Compensa *4 tion Law, which relegated dependent unacknowledged illegitimate children to a status below that of dependent legitimate children held to violate the equal protection clause of the Fourteenth Amendment]; New Jersey Welfare Rights Organization v Cahill, 411 US 619 [New Jersey legislation providing for "Assistance to families of the Working Poor” violative of the equal protection clause of the Fourteenth Amendment by discriminating against illegitimate children in the provision of benefits]; Matter of Hoffman, 53 AD2d 55 [expanded the definition of "issue” where it appears standing alone in a will to include legitimate as well as illegitimate descendants absent an express intent to the contrary]). This trend in favor of expanding the rights of illegitimates was continued in Trimble v Gordon (supra), where the Supreme Court struck down section 12 of the Illinois Probate Act, which allowed illegitimate children to inherit by intestate succession only from their mothers, though legitimate children would inherit by intestate succession from both their mothers and fathers.
Whether or not the two-year requirement of EPTL 4-1.2 (subd [a], par [2]) is constitutional should be answered in light of this modern trend toward expanding the rights of illegitimates. As was stated by the Supreme Court in Webster v Aetna Cas. & Sur. Co. (supra, p 175): "The status of illegitimacy has expressed through the ages society’s condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual— as well as unjust — way of deterring the parent.”
Although the provision requiring entry of an appropriate order of filiation before an illegitimate child can take from its father in intestacy has withstood constitutional attack in the Lalli case, it does not necessarily follow that the provision requiring the paternity proceeding be instituted within two years from the child’s birth should also withstand such attack. Subdivision (a) of section 517 of the Family Court Act sets forth time requirements in which paternity proceedings are to be instituted. The statute starts off with requirements similar to those of EPTL 4-1.2: namely, that paternity proceedings may be instituted "during the pregnancy of the mother or *5 after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child”. However, the Family Court Act goes further and provides for other circumstances whereby the two-year bar is removed; such as, when paternity has been acknowledged by the father in writing or by furnishing support. To permit the institution of paternity proceedings after two years from the birth of the child, and then to prohibit that child to whom paternity was established from inheriting from his-father creates an illogical situation which serves no legitimate State interest, compelling or otherwise.
The two-year period prescribed by EPTL 4-1.2 has been viewed as a Statute of Limitations which may be lost by the putative father’s failure to invoke it or by his voluntary relinquishment of such defense. Surrogate Sobel has held filiation orders, which were obtained upon the father’s admission of paternity some nine years after the birth of four illegitimate children, effective to legitimatize the children notwithstanding the two-year period of EPTL 4-1.2. He concluded that the putative father’s failure to plead the statute and his voluntary admission of paternity in the proceeding constituted both a waiver and a relinquishment (Matter of Bell, NYU, Nov. 10, 1969, p 17, col 1). Again, the two-year Statute of Limitations has been held waived by Surrogate Midonick where the order of filiation and support had been made on the consent of the father more than two years after the birth of the child (Matter of Thomas, 87 Misc 2d 1033). Similarly, Surrogate Di Falco has decided that where the decedent had admitted paternity he effectively waived the two-year Statute of Limitations. Thus, where the putative father voluntarily appeared in a paternity proceeding brought approximately five years after the child’s birth and failed to oppose the application, the defense was waived (Matter of Nurse, NYLJ, Dec. 12, 1976, p 10, col 1).
While "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers’ estates than that required either for illegitimate children claiming under their mothers’ estates or for legitimate children generally” (Trimble v Gordon, 430 US 762, 770, supra), it does not appear that the inflexible two-year rule of EPTL 4-1.2 (subd [a], par [2]) serves such standard. Nor does such time limitation serve a State purpose for "the orderly settlement of estates or the dependa *6 bility of titles to property passing under intestacy laws.” (Trimble v Gordon, supra, p 771.) The difficulty of proving paternity and the related danger of spurious claims provide the basis for requiring an order of filiation during the lifetime of the father. Whether such order is obtained within two years of birth of the child or 16 years thereafter, as in the present case, does not matter. As was stated by Surrogate Midonick in Matter of Perez (69 Misc 2d 538, 543): "the last 20 words of EPTL 4-1.2 (subd. [a], par. [2]) must be disregarded as patently setting up as unconstitutional invidious distinction, unequally protecting children depending upon their age at the institution of successful paternity suits.”
It is accordingly determined that Irene Louridas is a legitimate child of the decedent with status to file objections to probate.