EDNA BETZ, Respondent, *v.* PETER HORR, Appellant.

Submitted October 1, 1937; decided November 23, 1937.

*Sidney Zimet, Eugene Sherk* and *Bernard E. Perelson* for appellant. The adoption statutes, without qualification or exception, relieve the natural parents from all responsibility for children adopted. (*Matter of Heye,* 241 App. Div. 907; *Matter of MacRae,* 189 N. Y. 142; *Matter of Cook,* 187 N. Y. 253; *Gross* v. *Gross,* 110 Misc. Rep. 278; *Matter of Hering,* 196 N. Y. 218; *Matter of Thomas,* 216 N. Y. 426.) Section 125 of the Public Welfare Law (Cons. Laws, ch. 42) does not affect the status under nor does it change or supersede section 114 of the Domestic Relations Law (Cons. Laws, ch. 14). (*Matter of Heye,* 241 App. Div. 907; *Matter of MacRae,* 189 N. Y. 142; *Matter of Cook,* 187 N. Y. 253; *Gross* v. *Gross,* 110 Misc. Rep. 278.)

*Paul Windels, Corporation Counsel* (*Paxton Blair, Arthur Bainbridge Hoff* and *Benjamin Rosen* of counsel), for respondent. Upon the inability of foster parents to support an indigent adopted child, the burden should shift to the natural parents rather than to the public treasury. (*Matter of McKeag,* 141 Cal. 403; *Purinton* v. *Jamrock,* 195 Mass. 187; *People ex rel. Metropolitan St. Ry. Co.* v. *Tax Commissioners,* 174 N. Y. 417; *Porter* v. *Powell,* 79 Iowa, 151; *Hendrickson* v. *Town of Queen,*

149 Minn. 79; *Southern California Edison Co.* v. *Industrial Accident Comm.*, 92 Cal. App. 355; *New York Central R. R. Co.* v. *White*, 243 U. S. 188; *Middleton* v. *Texas Power & Light Co.*, 249 U. S. 152; *Chamberlin, Inc.*, v. *Andrews*, 271 N. Y. 1; 299 U. S. 515; *Dawley* v. *McKibbin*, 245 N. Y. 557; *Cohen* v. *Neustadter*, 247 N. Y. 207; *Borgnis* v. *Falk Co.*, 147 Wis. 327; *Matter of Kane* v. *Necci*, 269 N. Y. 13; *People* v. *Wolfe*, 272 N. Y. 608.)

RIPPEY, J. The petitioner, Edna Betz, brought this proceeding against her natural father, Peter Horr, in the Domestic Relations Court of the City of New York to compel him to furnish her with support on the ground that she was unable to maintain herself and was likely to become a public charge. After a trial, the court ordered appellant to pay to petitioner four dollars per week commencing September 8, 1936. Subsequently a motion to vacate the foregoing order was denied. An appeal was taken to the Appellate Division, second department, where the order was affirmed by a divided court but leave to appeal to this court was granted and the question " Should the motion have been denied? " was certified for our consideration.

The facts presented at the trial were not in dispute. Petitioner is the legitimate daughter of Peter Horr and was twenty-three years of age when the proceeding was commenced. Her natural mother is dead. On January 26, 1915, an order and decree of adoption was made by the County Court of Queens county whereby she was adopted by her maternal grandparents, George Betz and Catharena Betz. By the terms of the order she was authorized to and did assume the name of her foster parents. Catharena Betz is now dead and George Betz is unable to contribute to petitioner's support. Peter Horr is a blacksmith sixty years of age and earning between twenty-one and twenty-four dollars per week. The petitioner is ill, incapable of supporting herself, and is liable to become in need of public relief.

By the provisions of subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York in force when this proceeding was commenced (Laws of 1933, ch. 482), "the parents, the grandparents, the children and the grandchildren of a dependent adult who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative." Liability of the "father" for the support of a destitute adult child who is or is liable to become a public charge is made of statewide application by the provisions of section 125 of the Public Welfare Law (Cons. Laws, ch. 42). Section 914 of the Code of Criminal Procedure provides, among other things, that the *father* of a recipient of public relief or of a person liable to become in need thereof shall, if of sufficient ability, be liable for his support.

Defendant asserts he is relieved from any such liability by virtue of the adoption decree. That decree provided that petitioner should thereafter be regarded and treated in all respects as the lawful child of the foster parents, that they were thereby "deemed to have incurred the responsibilities of parents in respect to such minor" and that "the said George Betz and Catharena Betz, his wife, on the one part and the said minor on the other side shall sustain toward each other, the legal relation of parents and child, and have all the rights and be subject to all the duties of that relation." The question for our determination is the effect of adoption on the liability of the defendant as the natural "father" or "parent" of plaintiff under the provisions of the adoption decree and of the above-mentioned statutes relating to support for impoverished children.

Adoption, as a form of domestic relation, was unknown to the common law and exists only by statute. (*Matter*

*of Thorne,* 155 N. Y. 140.) Earlier than 1873, charters were granted by the Legislature in which specific charitable societies were authorized to cause their wards to be adopted, but the first general statute in this State covering adoption was chapter 830 of the Laws of 1873. Amendments to parts of that act were made by chapter 703 of the Laws of 1887 and general provisions for adoption were continued by sections 60–68 of chapter 272 of the Laws of 1896. Adoption now is controlled by the provisions of article 7 of the Domestic Relations Law (Cons. Laws, ch. 14; Laws of 1909, ch. 19, §§ 110–118, as amd.). Section 114 relates to the effect of adoption. Among other things, that section provides that " thereafter the parents of the person adopted are relieved from all parental duties toward, and of all responsibility for, and have no rights over such a child, or to his property by descent or succession." The act further provides that the adopted child's " rights of inheritance and succession from his natural parents remain unaffected by such adoption." The Legislature further decreed that " the foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other * * * and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting," etc. The purpose of the section was to define the relation, after adoption, of the child to its natural parents and to its adopting parents, together with their reciprocal rights, duties and privileges.

This court has said that the legal effect of the foregoing statute was to make the adopted child the natural child of the adoptive parent (*Carpenter* v. *Buffalo General Electric Co.,* 213 N. Y. 101, 108), to give the " adopted child the same legal relation to the foster parent as a child of his

body " (*Matter of Cook*, 187 N. Y. 253, 260), and that " the adoption divests the natural parents of the relation which they had theretofore sustained toward the infant and such change of relation is in no way affected by the death of the foster parent or parents." (*Matter of MacRae*, 189 N. Y. 142, 147.) In *Gross* v. *Gross* (110 Misc. Rep. 278) it was held that the duty of the natural parent to support the child ceases after adoption.

The statutes above referred to must be read together. The intent and purpose of the legislative commands must be found from the statutes relating to the same general subject-matter taken as a whole. (*Seligman* v. *Friedlander*, 199 N. Y. 373.) The same words cannot mean one thing in the Domestic Relations Law and have an entirely different meaning in the Public Welfare Law, the Domestic Relations Court Act of New York City and the Code of Criminal Procedure, unless such an intent on the part of the Legislature is clearly expressed. The Legislature has expressed no such intent. We think it clear that the word " father " or " parent " as used in those statutes refers, after adoption takes place, to the foster parent or foster father and excludes the natural parent from legal liability for support of the adopted child thereafter under all contingencies.

The trial court and a majority of the Appellate Division felt that such a construction would be contrary to public policy. If the question of public policy is here involved, the Legislature has decreed that it is the public policy of the State to relieve the natural parent from any responsibility for his child's support after it has been duly adopted by another. To bring about the result arrived at by the lower courts it would be necessary to read into section 114 of the Domestic Relations Law an intent to preserve the duty and responsibility of the natural parent to support the child notwithstanding the plain and unambiguous provision that, after adoption, all responsibility of the natural parent for the child ceases,

and to read into section 125 of the Public Welfare Law and into the provisions of the Domestic Relations Court Act and Code of Criminal Procedure above referred to a meaning of the term " father " or " parent " which covers, at the same time, both the natural father whose responsibilities have ceased and the foster father whose responsibilities are absolute after adoption. The wording of the statutes and the intent and purpose of the Legislature seems to be clear and unambiguous and courts are not privileged to read into the statutes a different meaning, purpose or intent.

The orders should be reversed, the motion to vacate should be granted, without costs, and the question certified answered in the negative.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Orders reversed, etc.