## In the Matter of the Estate of CHARLES W. BRYANT, Deceased.

Surrogate's Court, New York County, January 7, 1938.

*Edgar Hirschberg* [*Sol Zaretzki* of counsel], for the appellant.

*Saul J. Cutler*, for the administratrix.

DELEHANTY, S. The State Tax Commission appeals from the order of July 29, 1937, exempting the estate from estate tax on the appraiser's report. The ground of appeal is that the appraiser has erroneously allowed an exemption to Henry H. Bryant, the foster-father of the decedent. The decedent was legally adopted on June 10, 1903, by Henry H. Bryant, whose distributive interest in the estate amounts to $4,609.75. It is the contention of the State Tax Commission that a foster-parent is not specified as a person entitled to an exemption under the Tax Law and is not a person entitled thereto under subdivision b of section 249-q of the Tax Law which grants an exemption of $5,000 to "lineal ancestors or descendants."

In view of the statutory relationship existing between foster-parents and adopted children, the court holds that the foster-parent comes within the term "lineal ancestor" and is entitled to an exemption. The Court of Appeals recently, in *Betz* v. *Horr* (276 N. Y. 83), had occasion to pass upon the effect of section 114 of the Domestic Relations Law. The court there stated (p. 87):

" This court has said that the legal effect of the foregoing statute was to make the adopted child the natural child of the adoptive parent (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101, 108), to give the ' adopted child the same legal relation to the foster parent as a child of his body.' (*Matter of Cook*, 187 N. Y. 253, 260.) " Again (at p. 88) the court said: " The same words cannot mean one thing in the Domestic Relations Law and have an entirely different meaning in the Public Welfare Law, the Domestic Relations Court Act of New York City and the Code of Criminal Procedure, unless such an intent on the part of the Legislature is clearly expressed. The Legislature has expressed no such intent. We think it clear that the word ' father ' or ' parent,' as used in those statutes, refers, after adoption takes place, to the foster-parent or foster-father and excludes the natural parent from legal liability for support of the adopted child thereafter under all contingencies."

In *Warren* v. *Prescott* (84 Me. 483; 17 L. R. A. 435; 24 A. 948) the court was dealing with the words " lineal descendants " as used in a statute. The court there said (p. 487): " He takes as a lineal descendant of the legatee, by force of the statute. R. S. c. 74, § 10. Not as a lineal descendant by birth, but as a statutory lineal descendant and as lawfully in the line of descent as if he were placed there by birth.

" It is as competent for the Legislature to place a child by adoption in the direct line of descent as for the common law to place a child by birth there. And that is precisely what the Legislature has done, and what it undoubtedly intended to do when in strong and emphatic language, it declared that a legally adopted child becomes to all intents and purposes, the child of the adopters, the same as if he were born to them in lawful wedlock, with the two exceptions named, neither of which, as we have already seen, is applicable to such a case."

This reasoning is equally applicable to the term " lineal ancestor " as used in section 249-q of the Tax Law. The appeal of the State Tax Commission is dismissed. Submit, on notice, order accordingly.