OPINION OF THE COURT
Arthur Ervin Blauvelt, J.
These are motions by defendant Trullo for summary judgment and a protective order and a cross motion by defendants Scialo for summary judgment. The motions are made in an interpleader action brought by plaintiff to determine which of the defendants is entitled to the $25,000 group life insurance death benefit provided by plaintiff’s policy No. 17000-G insuring the life of Franklin A. Trullo, more commonly known as Frank Trullo.
Frank Trullo was a postal clerk employed by the United States Post Office. As such he became an insured under the aforesaid group life policy which was issued November 24, 1954, as subsequently amended from time to time. Frank Trullo never married and his father, Alfred Trullo, died April 8, 1963. Frank Trullo’s mother, defendant Clara Trullo, is still living. Frank Trullo had a son born out of wedlock, defendant Shawn Lewis Scialo, born February 17, 1969, whose natural mother was Holly Kress.
Holly Kress brought a proceeding in Monroe County Family Court for an order compelling Frank Trullo to support her son Shawn. A compromise agreement for the support of Shawn was entered into by Shawn’s natural parents on August 24, 1970 and, upon notice to the Public Welfare Department of Monroe County, the Family Court made an order approving *558 the support agreement. In the support agreement, Frank Trullo acknowledged that he was the natural father of Shawn.
Subsequently, Holly Kress married Ralph J. Scialo and on August 24, 1972 she and her husband Ralph brought a proceeding seeking an order of adoption of Shawn by them. Apparently Frank Trullo opposed the adoption and it was not until August 5, 1974 that the adoption was finalized and Shawn’s name was changed to Shawn Lewis Scialo.
While still employed by the United States Post Office and on November 10, 1976, Frank Trullo died, domiciled in New York State, and still insured under plaintiffs group life policy No. 17000-G. Both Frank Trullo’s mother Clara Trullo and his son Shawn, now Shawn Lewis Scialo, born out of wedlock, as aforesaid, claim the entire proceeds of the group life policy.
This policy was written pursuant to section 8701 et seq. of title 5 of the United States Code. Section 8705, as amended, governs the designation, or change of designation, of beneficiaries and specifies those to whom death benefits will be paid in the absence of a designation. It is the construction of section 8705 which is determinative of this action and of these motions.
Subdivision (a) of section 8705 provides that an insured can designate a beneficiary by an instrument in writing, signed by him and witnessed by one other than the designee, provided that the designation, so executed and witnessed, is filed by the insured with his employing office prior to his death. In the event that there was no beneficiary specifically designated by the insured, executed, witnessed and filed as aforesaid at the time of the insured’s death, the policy provides that the proceeds shall be paid to the following persons living at the time of the insured’s death in the following order of precedence:
(1.) "[T]o the widow or widower of the employee.
(2.) "[I]f none of the above, to the child or children of the employee and descendants of deceased children by representation.
(3.) "[I]f none of the above, to the parents of the employee or the survivor of them.
(4.) "[I]f none of the above, to the duly appointed executor or administrator of the estate of the employee.
(5.) "[I]f none of the above, to other next of kin of the *559 employee to be entitled under the laws of domicile of the employee at the date of his death.”
No copy of plaintiff's complaint has been handed up to the court, which would have been helpful in analyzing defendants’ answers, but sufficient appears in the affirmative prayers for relief to resolve the issues here involved. In substance, each defendant alleges that the deceased did not designate a beneficiary in the manner required, namely, filing of a designation duly executed and witnessed, and each claims death benefits as set forth in one or another of the five classes of beneficiaries as printed in the policy. In fact paragraphs 18 and 20 of the Scialo answer allege:
"18. That the decedent, Franklin A. Trullo, intended his son Shawn Lewis Scialo to be his beneficiary on the policy and intentionally never took any steps to designate specifically any other person than his 'child' as provided in the policy itself.”
"20. That the decedent never changed or altered the aforesaid designation upon the belief and reliance that the language of the policy was such that the benefits would vest in his child pursuant to its contractual terms.”
Also, the Scialo original memorandum of law affirmatively states that Frank Trullo did not designate a beneficiary.
Simply stated, if Shawn Lewis Scialo was in the legal status of a "child” of the decedent at time of death within the meaning of the policy, he will take to the exclusion of decedent’s mother; if he was not such a "child” within the meaning of the policy the mother takes all.
Shortly after joinder of issue, defendant Scialo served a notice to take the deposition of Clara Trullo and to produce
"1. Any and all writings found in the belongings of Franklin A. Trullo which refer to or acknowledge in any manner the existence of his son Shawn.
"2. A copy of the memorandum left by Franklin A. Trullo by which he attempted to designate his son Shawn as beneficiary of his bank accounts.”
At the same time, defendant Trullo served a notice to take the deposition of plaintiff Metropolitan Life Insurance Company and to produce:
"1. A photostatic copy of the policy issued to Franklin A. Trullo.
"2. Any accompanying papers given to Franklin A. Trullo
*560 upon his commencement of employment explaining the terms of the policy.
"3. Copies of any and all documents given to Franklin A. Trullo regarding the issuance of the policy from 1954 to date of his death.
"4. Copies of any and all writings from Franklin A. Trullo to his employer or the carrier regarding the insurance policy upon his life including any prior designated beneficiary.”
In disposition of the notice served on Metropolitan, its attorneys sent defendant’s attorneys the following letter dated January 30, 1978, with the enclosures therein referred to:
"Dear Mr. Polito:
Enclosed please find copies of Policy 17000-G and Certificate of Insurance which would have been furnished to Franklin Trullo. These are the only documents in the possession of the Metropolitan which are responsive to your list of documents in your notice to take Deposition dated December 30, 1977. I understand that you will not require an Officer of the Company to appear on February 8, 1978. I will appear to state on the record that all documents which could be located have been provided. Thank you for your cooperation.
Very truly yours,
Susan W. Allport.”
This letter is attached to Scialo’s attorneys’ answering affirmation dated March 7, 1978. Attached to the same affirmation is a letter dated July 13, 1977 to Scialo’s attorneys from the office of Federal employees group life insurance, which letter apparently satisfied Scialo’s attorneys that no further evidence was obtainable from that source either.
As to the notice to take the deposition of defendant Clara Trullo, her attorneys brought the motions now before this court for decision, namely, for a protective order vacating the notice to depose Clara Trullo and for summary judgment directing payment of the death benefit to her. Defendant Scialo cross-moves for summary judgment.
At the outset, it is necessary first to dispose of Clara Trullo’s motion for the protection order.
As to item one in the notice, it is clear that Scialo hopes to obtain evidence as to decedent’s intentions concerning Shawn’s being the beneficiary of these death benefits. If decedent’s intention in this respect is an issue in this case, a *561 question of fact will have been raised which would compel denial of Clara Trullo’s motion for summary judgment.
In 1966, subdivision (a) of section 8705 of title 5 of the United States Code was amended by adding the following requirement in order to file a valid designation of beneficiary or change of beneficiary under a Federal employees’ group life insurance policy: "For this purpose, a designation, change or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.”
An enlightening explanation of what occasioned the foregoing addition is found in Pekonen v Edgington (298 F Supp 158, 159): "The italicized words were added by amendment in 1966. (80 Stat. 78 [1966].) In a case decided before the amendment, on facts similar to the instant case, a court decided that designation of beneficiary in a holographic will was sufficient to entitle the designee to the life insurance proceeds. Sears v. Austin, 292 F.2d 690”. Further, the court added that unless the designation has been executed, witnessed and filed in strict compliance with the statute, the order of priorities printed in the statute will prevail over extraneous documents and evidence. To the same effect are Stribling v United States (419 F2d 1350) and Adams v Macy (314 F Supp 399).
Prior to the 1966 amendment, some courts had been giving these filing requirements a very liberal construction placing emphasis on developing what the decedent’s intention had been (Smith v Metropolitan Life Ins. Co., 142 F Supp 320). Not only is intent not a fact to be decided but an offer to prove intent would be denied. The decedent and all concerned have agreed that Shawn was decedent’s natural son and, since any offer of extraneous evidence will be incompetent, the defendant’s motion for a protective order is granted together with any attempt to delve into the alleged note concerning a decedent’s $10,000 bank account which has nothing to do with the issues involved in this action. This can be developed in pending proceedings in Surrogate’s Court, Monroe County.
Accordingly, the remaining issue, one of law, is to determine whether or not Shawn’s legal status was that of a "child” of decedent at the time of decedent’s death.
In Murphy v Houma Well Serv. (409 F2d 804, 810) the general rule is stated thus: "Overwhelmingly, courts declare that in construing the terms 'child’ or 'children’ in a federal statute, a court should look to state law.”
Our Court of Appeals has had occasion to rule on the legal *562 effect that an adoption has on the relationships between natural parents, adoptive parents and the adopted child and did so as follows in Betz v Horr, (276 NY 83, 87, 88): "This court has said that the legal effect of the foregoing statute was to make the adopted child the natural child of the adoptive parent * * * to give the 'adopted child the same relation to the foster parent as a child of his body’ * * * and that 'the adoption divests the natural parents of the relation which they had theretofore sustained toward the infant and such change of relation is in no way affected by the death of the foster parent or parents.’ ”
Under New York State law there is no question but that were it not for the adoption, Shawn would have enjoyed the legal status of a "child” under the policy. The effects of "no adoption” as contrasted with "adoption” are well illustrated in Metropolitan Life Ins. Co. v Thompson (368 F2d 791, 793): "Of course, there being no federal law of domestic, relations, whether a particular claimant falls within the federally-defined classification must often be resolved by referral to state law. * * *. Thus, a child adopted by another under state law can truly be said no longer to qualify as a 'child’ of his natural parent within the meaning of the federal category. In contrast, the minor child in the case presently under consideration was not cut off from being the child of his natural father by any affirmative act of the state.”
The controlling statute in New York is section 117 of the Domestic Relations Law which states, in part:
"§ 117. Effect of adoption.
1. The rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided.”
Another case in point which revolved around a New Jersey law very similar to New York’s is La Bove v Metropolitan Life Ins. Co. (164 F Supp 808, 813): "If, therefore, the Courts have said that the legal distinction between natural born and adopted children has been removed, it would seem logical that they would say in the present case that the child cannot be the legal child of two fathers at the one and the same time; she is, therefore, the child for all legal purposes of the adopting father. And if the Courts of New Jersey say that an adopted child is just the same to the adopting parents as though born in lawful wedlock, it would likewise seem to *563 follow that legally one cannot be born to two sets of parents, and is, therefore, the child of the adopting parents.”
La Bove was affirmed by the Circuit Court of Appeals (264 F2d 233, 234-235) where it is further stated: " '[T]here is no federal law of domestic relations, which is primarily a matter of state concern.’ De Sylva v. Ballentine, 1956, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415. This general statement is borne out by the sixth provision of the section of the statute above outlined. Reference is there made to 'other next of kin of such employee entitled under the laws of domicile of such employee at the time of his death.’ * * * The New Jersey statute provides that Francine, the natural child of Harry LaBove and the adopted child of Sidney Kasser, may not claim as a child a share in LaBove’s estate if he had died intestate. It tends strongly to prove, likewise, that she cannot prevail in this case.”
Emphasis seems to be placed upon the fact that La Bove consented to his child’s adoption whereas Frank Trullo did not. As the court stated in "Doe” v "Roe” (37 AD2d 433, 435): "The welfare of the child is the prime consideration for the court in any adoption proceeding and, to use the Surrogate’s words, that could not be 'the subject of barter.’ ”
All fathers must be given notice of the pending adoption proceeding (Stanley v Illinois (405 US 645) but for all legal purposes their consents are meaningless.
Accordingly, defendant Clara Trullo’s motion for summary judgment is granted and the cross motion of defendant Shawn Lewis Scialo for summary judgment is denied.