OPINION OF THE COURT
Evans V. Brewster, S.
In this intermediate trustees’ accounting, the petitioners have requested a construction of article tenth of decedent’s will to determine the identity of the person or persons entitled to income as secondary life beneficiary of the trust.
The decedent died on November 5, 1973. In her will dated July 27,1973, article tenth directed that the residuary estate be held in trust with the income therefrom payable to decedent’s daughter during her lifetime. Upon *366 her death (which occurred on September 27, 1980) the trustees were directed “to divide said trust fund into as many shares or parts as there shall be issue, per stirpes and not per capita, and to continue to hold each of such part or parts in trust during the lifetime of one of said persons.” In the instant proceeding, an alleged nonmarital child of decedent’s daughter who was adopted out of the family shortly after birth, has appeared and seeks to share the trust equally with the only marital child.
In 1976, the executors became aware that in addition to a marital child, decedent’s daughter had given birth to a nonmarital child in 1952 who had been surrendered for adoption shortly after birth. Counsel to the executors advised that the nonmarital child be made a party to their accounting. Thereafter, they were authorized by decedent’s daughter to initiate a search for the nonmarital child and successfully traced him through the adoption agency which had placed the child for adoption. The adoptive parents were advised of the circumstances of the search and after consultation with the child chose to disclose their identities. The nonmarital son was then made a party to the accounting proceeding along with the marital child. Neither the attorney for the nonmarital child nor the guardian ad litem representing the marital child, an infant at that time, filed objections. On March 20, 1977, a decree was made approving the account, funding the trust, and discharging the executors. From that date until her death in 1980, decedent’s daughter received all of the income from the trust as the primary income beneficiary under the will. Upon the death, income was then paid to the marital child but withheld from the nonmarital child who thereupon filed a petition to compel an accounting by the trustees thereby presenting the issue of his status to the court. The trustees filed an intermediate account because of the death of the primary income beneficiary and in their petition requested a construction of the will to determine the proper secondary income beneficiary or beneficiaries thereunder. In this proceeding, the parties are virtually the same as those in the executors’ accounting proceeding.
The marital son has filed objections placing in issue the identity of the alleged nonmarital son as well as his status *367 as issue of the decedent under the will after his adoption. The nonmarital son has filed objections in which he asserts that since the executors’ accounting recognized his status as issue, it is res judicata and the executors are estopped from denying his identity and status. He further argues that the adoption does not affect his right to inherit from his natural family because as a matter of law “issue” as used in the will includes nonmarital children unless otherwise specifically excluded. Both parties have moved for summary judgment on the issues presented.
In support of the motions for summary judgment, affidavits have been submitted. The parties have stipulated (1) that these affidavits may be considered by the court in deciding the motions; (2) that had these individuals testified at a hearing in connection with the pending motions, the testimony given by each of the individuals would have been consistent with and substantially the same as the contents of their affidavits; (3) that for the purpose of the pending motions for summary judgment the objectant non-marital child is the son of decedent’s daughter and is in the bloodline of the decedent; and (4) that the decedent first became aware of the nonmarital son of her daughter at the time of his birth.
The parties having stipulated, for the purpose of the pending motions, that the objectant nonmarital child is the nonmarital child of decedent’s daughter and in decedent’s bloodline, the court need not address that issue.
The contention that the rights and status of the parties were determined in the executors’ accounting cannot be sustained. Allegations made by the executors in their petition to account, the listing in a petition of parties alleged to have an interest in a decedent’s estate or statements made by a guardian ad litem in his report, aré not judicial determinations and are not binding in fact or in law unless a decree is made with respect to the same (Matter of Knapp, 141 Misc 540). A decree is binding upon all parties only as to matters contained within the account or specifically addressed by the court. The only matters considered in the executors’ accounting were the settlement of the account, the funding of the residuary trust and the discharge of the executors. No issue was presented for *368 determination of the right of any person to a share in the trust and no determination of the parties entitled to a secondary income interest was made by the court. The accounting decree dated May 20, 1977 ordered payment of various administration expenses and ordered the executors “to distribute the principal balance remaining after the aforesaid payments have been made” to the fiduciaries “as Trustees of the trust created under Paragraph Tenth of the Last Will and Testament of the decedent”. The court did not address itself to the question of who would be secondary income beneficiaries since such beneficiaries had at best contingent interests during the lifetime of the primary life beneficiary. Further, no stipulation, understanding or agreement between the parties would be binding or effective without court approval since the interest of an infant was involved (SCPA 2106). The affirmative defenses of res judicata and estoppel are without merit and are dismissed.
Whether or not an adopted child may take as “issue” of the natural family from which he was “adopted out” is the crux of the present proceeding. Cases decided prior to the changes made in the Domestic Relations Law by chapter 406 of the Laws of 1963 and chapter 14 of the Laws of 1966 are no longer applicable. Research has failed to disclose any subsequent decisions in New York which address this issue.
The effect of an adoption is set forth in section 117 of the Domestic Relations Law which provides, insofar as pertinent, as follows:
“1. After the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession, except as hereinafter stated.
“The rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided * * *
“2. This section shall apply only to the intestate descent and distribution of real and personal property and shall not affect the right of any child to distribution of property *369 under the will of his natural parents or their natural or adopted kindred whether such natural parent or kindred shall have died heretofore or shall die hereafter or under any inter vivos trust instrument heretofore or hereafter executed by such natural parent or his or her kindred.”
The right of the adoptive child to inherit from and through his natural parent was for the first time eliminated by the amendment made to section 117 of the Domestic Relations Law. The legislative note appended to the amendment, chapter 406 of the Laws of 1963, stated that the purpose of the change, recommended by the Temporary State Commission on the Law of Estates, was to carry out a public policy of placing the adopted child as far as possible within the bloodlines of his new family for inheritance purposes and was intended to establish that the adopted child will inherit from his foster parents and their kindred. At the same time, all inheritances by the adopted child from his natural family were terminated severing all ties with the natural family. The only exception specifically provided for was where a natural parent remarries and consents to the adoption of the child by the spouse in which case, the right of the adopted child to inherit from and through the consenting natural parent remained unaffected by the adoption.
“The adoptive relationship * * * is solely the creature of statute, unknown to the common law (Betz v Horr, 276 NY 83). Having created the adoptive relationship, the State should be allowed to determine to what extent the child’s contacts with its natural family will be ended.” (People ex rel. Sibley v Sheppard, 54 NY2d 320, 327.) The language of the statute discloses a clear intent that upon adoption, the adoptive child is placed within the bloodlines of his or her new family for inheritance purposes and that all inheritance by such adopted child from the natural family is terminated (Matter of Nelson, 107 Misc 2d 1035; Matter of Blake, 62 Misc 2d 276). However, the Legislature did not terminate and void all ties with an adopted child’s natural relatives for it adopted subdivision 2 of section 117 of the Domestic Relations Law. In adopting subdivision 2 of section 117 of the Domestic Relations Law, the Legislature had before it for consideration the note of the Temporary *370 State Commission on the Law of Estates (L 1966, ch 14, note), which was appended to their recommendation of the adoption of amendments of section 117 of the Domestic Relations Law which stated in part: “This act is also intended to provide specifically that it does not affect any interest an adopted child might have under the will or inter vivos instrument of any member of his natural family, whether made before or after March 1,1964.” The court has been unable to discover any evidence whatsoever that the intent of the Legislature in adopting the amendment was not identical to that stated by the Temporary State Commission on the Law of Estates.
In the matter now before the court, the trust created under article tenth of the will provides that “[u]pon the death of my daughter, Ardith Reid, leaving issue her surviving”, the trust shall continue during the life of such issue. Ardith surrendered her nonmarital child for adoption. Upon the completion of that adoption, such nonmarital child’s relationship to Ardith was severed and he no longer could be considered as issue of Ardith. In effect, the adopted-out child is a stranger to his natural parents (Betz v Horr, 276 NY 83, supra; Matter of Pierro, 173 Misc 123). The more complicated question is whether a nonmarital child, born in 1952, given up for adoption out of the family shortly after birth and adopted by strangers, who had no knowledge of and no contact or relationship with his natural mother or her mother and her kindred prior to the decedent’s (grandmother) death in 1973, is within the class entitled to participate in a disposition to “issue” in the grandmother’s will.
It is argued on behalf of the marital grandchild of decedent that where adoption out of the family through an authorized agency occurs, the secrecy involved in the proceeding, the sealing of the records and withholding the same from inspection is indicative of a public policy to insure the protection of the adoptive parents and child from interference by a natural parent, the protection of privacy of the natural parent, and to cut off all relationships of the natural family with the child. In contrast to this, it is asserted that where private placement adoption takes place, the records are not sealed, the parties are all *371 known to each other and it is only in this type of case that the reservation of rights set forth in subdivision 2 of section 117 of the Domestic Relations Law applies. The statute itself, however, makes no such distinction. The termination of the rights of an adoptive child to inheritance or succession from and through his natural parents applies only to intestate descent and distribution. The statute specifically excepts the distribution of property under the will of the natural parents or their natural or adopted kindred. “Adoption is a status created by the State. Since it is entirely statutory and in derogation of the common law, adoption statutes must be strictly construed. (Matter of Santacose, 271 App Div 11, 16; 2 NY Jur, Adoption, § 3.)” (Matter of Pyung B., 83 Misc 2d 794, 796.) Over the course of years, the Legislature has placed the adopted child as far as possible within the bloodlines of his new family for inheritance purposes. At the same time it did not deprive the adopted child from inheritance from his natural family unit until the enactment of chapter 406 of the Laws of 1963, when the law which terminated the intestate descent and distribution of an adopted child from and through his natural parents was enacted. In the very recent case of People ex rel. Sibley v Sheppard (54 NY2d 320, supra), in which visitation rights by a maternal grandparent after adoption by the paternal grandparents were at issue, the court discussed various aspects of section 117 of the Domestic Relations Law. The court stated (p 327), “The adoptive relationship, however, is solely the creature of statute, unknown to the common law (Betz v Horr, 276 NY 83). Having created the adoptive relationship, the State should be allowed to determine to what extent the child’s contacts with its natural family will be ended.” The court also stated (p 326), “An adopted child may not in all respects be isolated from his or her natural family. Some may perceive an inconsistency in the termination of some rights, but not others, between the adoptive child and the natural family. If such exists, the desire for consistency in the law should not of itself sever the bonds between the child and the natural relatives.” The court recognized that where the adoption is within the family, the parties are all known to each other and there is an awareness in the *372 family of the relationship. Where adoption is out of the family through an agency and secrecy of the parties is maintained, perhaps a different rule should be applied since the child is then cut off from all contact with the natural family. The Legislature presumably was aware that in enacting the amendment of section 117 of the Domestic Relations Law the rights of the adoptive child, whether out-of-family or in-family adoption, were terminated but only with respect to “intestate descent and distribution of real and personal property”. (Domestic Relations Law, § 117, subd 2.) The marital grandchild respondent urges that cases in other jurisdictions which determined that a child in an out-of-family adoption was not entitled to distribution under the terms of a will of a member of his natural ancestors are applicable.
In Matter of Russell (17 Cal App 3d 758), in holding the relationship of the child adopted out of his family severed the right to inherit, the court considered section 2§7 of the California Probate Code which provided specifically that an adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption nor to the estate of a relative of the natural parent. Likewise, in the case of Stamford Trust Co. v Lockwood (98 Conn 337), the decision was based upon section 45-64a of chapter 778 of the Connecticut General Statutes Annotated, which terminates the relationship of natural parents and relatives for all purposes including inheritance. In North Carolina, in Crumpton v Mitchell (303 NC 657), the Supreme Court, in finding section 48-23 of the North Carolina General Statutes which provides in part that the entry of a final order of adoption relieves the child’s natural parents of all legal duties and obligations formerly due the child, concluded that the Legislature had intended to make the adopted child legally a stranger to the bloodline of his natural parents just the same as had been specifically provided in section 29-17 of the North Carolina General Statutes, in cases of intestacy. (See, also, First Nat. Bank of Oregon v Schwerin, 54 Ore App 460.) However, unlike the laws of other jurisdictions, the statute in New York is clear and states without equivocation that section 117 of the Domestic Relations Law applies only to *373 intestate descent and distribution and does not affect the right to a distribution of property under a will or inter vivos instrument. Until such time as the New York Legislature terminates the relationship of the adopted child and his natural family for all purposes whatsoever, the right to inherit under the will of the natural parents or kindred must be given effect regardless of whether the adoption was out of the family or not.
Two other grounds are urged by the natural grandchild for a finding in his favor. First, that at the time the will was made, the courts interpreted the word “issue” to mean “lawful issue” so that testatrix’ use of the word in her will was intended only for lawful issue of her daughter. Further that the word “issue” in and of itself creates a latent ambiguity as to its proper meaning where adopted children or nonmarital children are involved. Since it is the true intent of the testatrix that the court must determine, a hearing is requested to present proof to ascertain the intent of testatrix in the language used in the will. In view of the stipulation providing the affidavits of various individuals, a hearing is unnecessary.
In Matter of Hoffman (53 AD2d 55, 65), the court said, “we reject the rule that where the word ‘issue’, standing alone, appears in a will, it will be interpreted to include within its meaning only lawful descendants. We hold that the word ‘issue’ should be construed to refer to legitimate and illegitimate descendants alike in the absence of an express qualification by the testatrix.” (See, also, Matter of Leventritt, 92 Misc 2d 598, 604.) There are no qualifications expressed in the will with respect to the “issue” surviving decedent’s daughter. As used in the will, it describes a class of persons who may be the secondary income beneficiaries of the trust. Under EPTL 1-2.10, issue are defined as the descendants in any degree from a common ancestor, unless a contrary intention is indicated. “The well-established rule is that the courts construe language used in wills by reference to the testator’s intended meaning. (Matter of Jones, 38 NY2d 189; Matter of Thall, 18 NY2d 186.) This intention is to be ascertained from a reading of the four corners of the will. (Matter of Kosek, 31 NY2d 475.)” (Matter of Lyden, 96 Misc 2d 920, 921.) There is no lan *374 guage in the will itself suggesting an intention different from that defined by statute should be given to the word “issue”.
The testimony of various individuals having knowledge of the circumstances of the birth of the nonmarital child and the preparation and execution of decedent’s will, submitted in affidavit form by stipulation, establishes without question that the decedent was aware of the pregnancy of her daughter, the birth of the nonmarital son and his subsequent adoption. The decedent took no action to remove the nonmarital son from her will. While she may have been reluctant to acknowledge the existence of the birth of a nonmarital child to her daughter, an intent to exclude such child was not written into her will. It could easily have been included in her will by the simple direction that the bequest to her daughter’s issue be limited to “issue of a lawful marriage” or similar language which would not acknowledge or suggest that there was in fact a nonmarital child. Her failure to state her intention to disinherit the nonmarital child under the circumstances of her knowledge of the existence and adoption of such child, overcomes any inference of intent to disinherit which might arise from the secrecy which she maintained concerning the birth of a nonmarital child to her daughter.
Accordingly, the court determines that the “issue” of the decedent’s daughter entitled to an equal share of the trust fund as income beneficiaries of the trust created under article tenth of the will are the nonmarital as well as the marital children of the daughter.
The court is not oblivious to the jurisdictional problems which exist by virtue of the failure of the Legislature to totally sever the rights of adopted-out children to inherit, through intestacy or through a will or inter vivos trust from or through its natural or biological parents. The existence of an adopted-out child creates no problem in any proceeding to probate a will nor is there a jurisdictional problem in a proceeding involving a will in which persons receiving a distribution under the will are specifically named or in which adopted-out children are specifically excepted from a class or from receiving any distribution under the will.
*375 Where, however, as in this decedent’s will, a child is adopted out of the family and the will directs distribution to a class of which the adopted-out child would be a member, the failure to cite such adopted-out child results in a failure to achieve complete jurisdiction. As the existence of an adopted-out child may not be known to biological kindred of the adopted-out child making a will directing distribution to a class, a careful will draftsman must protect against this contingency to avoid a possible failure of jurisdiction in a subsequent proceeding.
Not only does the statute create jurisdictional problems but it presents a reason to seek to breach the privacy of adoption proceedings which the Legislature has provided the adopted child, the natural parents and the adoptive parents. It is not unreasonable to anticipate that resourceful adopted children, learning of this statute, will seek to break the seal and open their adoption proceedings to obtain the names of their natural parents and their kindred with a view to obtaining information which will lead them to wills of biological kindred which contain directions for distribution to a class of which they are members.
Legislative study of this statute is urged with the view to the enactment of an amendment to the existing statute which will clearly limit the adopted-out child’s interest in decedents’ estates to the bloodline of his adoptive parents except in those instances when a will of a biological kindred discloses in clear language an intention to distribute a portion of the estate to the adopted-out child. To continue the existing statute without amendment will give rise to litigation, delays in the settlement of estates and the distribution of property to persons not only unknown to a testator but to unintended beneficiaries.
The motion for summary judgment on behalf of the nonmarital respondent is granted and the cross motion by respondent marital son is denied. The request for attorney’s fees will be held in abeyance until the decree is made herein. The attorneys should submit detailed affidavits of services rendered in which the amounts requested are stated.